UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DUARTE NURSERY, INC., a
California Corporation; and
JOHN DUARTE, an individual,

              Plaintiffs,

    v.

UNITED STATES ARMY CORPS OF
ENGINEERS, et al.,

              Defendants.

No.  CIV. S-13-2095 LKK/DAD

**ORDER**

Plaintiffs own the property that is the subject of this action, and operate it as a nursery growing and selling nursery stock to farmers and others.  Complaint (ECF No. 1) ¶ 7.

On February 25, 2013, defendant U.S. Army Corps of Engineers ("Corps") wrote to plaintiff, stating that it had "determined that you have discharged dredged or fill material into … waters of the United States, without a [required] Department of the Army (DA) permit," in violation of Section 404, 33 U.S.C. § 1344, of the Clean Water Act ("the Act").  See Exhibit A (ECF No. 1-1) of

1

1  the Complaint.[1]  The Corps "directed" plaintiff to "cease and

2  desist all work in waters of the United States until this

3  violation is resolved."  Exh. A at 2.

4      The Corps went on to warn plaintiffs of the "[p]otential

5  enforcement actions" that could ensue, and attached an "extract

6  of the law" as an Appendix.  Id.; Id., Appendix A (ECF No. 1-1)

7  at 4.   Two of the enforcement actions the Corps warned of were

8  "fines"  and "imprisonment."  Exh. A at 2.  In apparent support

9  of these warnings, the Corps cited, in its "extract of the law,"

10  33 U.S.C. § 1319(c)(1)(A) and (c)(2)(A), both of which refer to

11  "fine[s]" and "imprisonment" for violations of 33 U.S.C. § 1311.

12  See Appendix A at 4.

13      The third enforcement action the Corps warned of was

14  "penalties."  Exh. A at 2.  In apparent support of this warning,

15  the Corps' "extract of the law" cited 33 U.S.C. § 1319(d), which

16  provides for "penalties" for violation of "any order issued by

17  the Administrator," as well as for any violations of 33 U.S.C.

18  § 1311.  See Appendix A at 4.[2]

19      The Corps did not explain in the CDO or the "extract" what

20  law authorized it to "direct" plaintiffs to "cease and desist"

21  their activities in the first place.  However, it is undisputed

22  ─────────────

23  [1] Exhibits to the Complaint are a part of the Complaint for all
   purposes.  Fed. R. Civ. P. 10(c).

24  [2] In fact, the CDO is not an "order issued by the Administrator,"
25  and plaintiffs do not challenge the Corps' assertion that there
   are no legal consequences – specifically, no "penalties" – for
26  failing to obey the CDO.  Plaintiffs do not assert that they were
   misled by the Corps' inclusion of the "penalty" citation.
27  Nevertheless, it seems strange that the Corps would include such
   apparently misleading language in its CDO and "extract."

28

that the Corps issued this document pursuant to its authority to formally notify a person that he is in violation of the Clean Water Act. <u>See</u> 33 C.F.R. § 326.3(c). The applicable regulations instruct the Corps to issue the notification "in the form of a <u>cease and desist order</u> <u>prohibiting</u> any further work" until the violation is resolved. <u>Id.</u> (emphases added).[3] Since the regulations instruct the Corps to issue this notification in the form of a "cease and desist order," the court will henceforth refer to it as such.[4]

On March 21, 2013, plaintiffs asked the Corps to set forth the factual basis of its determination. Complaint ¶ 52. The Corps provided a "partial response" on April 18, 2013.[5] <u>Id.</u>, ¶ 53.

On April 23, 2013, California's Central Valley Regional Water Quality Control Board ("Board") issued a "Notice of

---

[3] The regulation provides:

> Once the district engineer has determined that a violation exists, he should take appropriate steps to notify the responsible parties.

> (1) If the violation involves a project that is not complete, the district engineer's notification should be in the form of a cease and desist order prohibiting any further work pending resolution of the violation in accordance with the procedures contained in this part.

33 C.F.R. § 326.3(c).

[4] The U.S. refers to the document as a "cease and desist letter." Plaintiffs refer to it as a "cease and desist order."

[5] Neither side has provided either plaintiffs' request or the response.

1  Violation" ("NoV") to plaintiffs.  See Exhibit B (ECF No. 1-2) of

2  the Complaint.  The NoV asserts that plaintiffs "are in

3  violation" of Section 301, 33 U.S.C. § 1311, of the Act, in that

4  they were "discharging dredged or fill materials" into waters of

5  the United States, including Coyote Creek, without the required

6  permit from the Corps.  Exh. B at 2.  It also states that

7  plaintiffs are in violation of Section 402 of the Act, 33 U.S.C.

8  § 1342, and Section 13376 of the California Water Code, "for

9  discharging pollutants to Coyote Creek without a permit."  Id.

10 The NoV does not order plaintiffs to stop their violations, but

11 it does notify them that the cited violations subject them to

12 civil liability, and tells them to submit a plan for mitigation

13 of the violation.  Id.

14     In October 2013, plaintiffs filed this suit against the

15 Corps, and against seven officers of the Board in their official

16 capacities.  Six of the individuals are "members" of the Board,

17 and one is its Executive Officer.  The individual defendants are

18 sued "under the doctrine set forth in Ex parte Young, 209 U.S.

19 123 (1908)" and Cardenas v. Anzai, 311 F.3d 929, 934-38 (9th

20 Cir. 2002).[6]

21     The plaintiffs allege that the federal and state defendants

22 deprived them of property or property rights protected by the Due

23 Process clauses of the Fifth and Fourteenth Amendments.

24 Specifically, because of the federal cease and desist order

25 _____

26 [6] "Under the Ex parte Young doctrine, a plaintiff may maintain a
   suit for prospective relief against a state official in his
27 official capacity, when that suit seeks to correct an ongoing
   violation of the Constitution or federal law."  Cardenas, 311
   F.3d at 934-35 (emphasis in text).

28

4

1  ("CDO"), and the state NoV, plaintiffs left their wheat crop

2  unattended, losing $50,000 in planting costs.  Second, with those

3  documents in effect, plaintiffs would have to disclose them to

4  potential buyers, and thus the defendants have effectively placed

5  a lien on plaintiffs' property.  Plaintiffs further allege that

6  defendants acted in contravention of plaintiffs' Fifth and

7  Fourteenth Amendment Due Process rights by issuing the CDO and

8  the NoV without affording plaintiffs a hearing before or after

9  issuing the documents.

10      For remedies, plaintiffs ask for (1) declaratory judgments

11  that the failure to provide hearings is unconstitutional, (2) an

12  injunction against further enforcement proceedings based upon the

13  CDO and NoV, (3) an injunction requiring defendants to notify

14  those to whom the CDO and NoV were sent, that they are invalid,

15  and (4) a declaratory judgment that the regulations at 33 C.F.R.

16  Part 326 are unconstitutional.

17      The Corps moves to dismiss the claims against it (Claims 1,

18  2 and 5), on the grounds that (1) the claims are not ripe for

19  judicial review, and (2) plaintiffs have failed to state a claim

20  for violation of the Fifth Amendment.

21      The State defendants move to dismiss the claims against them

22  (Claims 3 and 4), on the grounds that the claims (1) are not ripe

23  for judicial review, and (2) are barred by Eleventh Amendment

24  sovereign immunity.

25      For the reasons that follow, the court will deny the Army

26  Corps' motion to dismiss, and grant the State's.

27  ////

28  ////

1

## II.   STANDARDS

2

### A.   Dismissal for Lack of Federal Jurisdiction.

3       It is well established that the party seeking to invoke the

4  jurisdiction of the federal court has the burden of establishing

5  that jurisdiction exists.  KVOS, Inc. v. Associated Press, 299

6  U.S. 269, 278 (1936); Assoc. of Medical Colleges v. United

7  States, 217 F.3d 770, 778-779 (9th Cir. 2000).  On a motion to

8  dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the standards that

9  must be applied vary according to the nature of the

10  jurisdictional challenge.

11       When a party brings a facial attack to subject matter

12  jurisdiction, that party contends that the allegations of

13  jurisdiction contained in the complaint are insufficient on their

14  face to demonstrate the existence of jurisdiction.  Safe Air for

15  Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a

16  Rule 12(b)(1) motion of this type, the plaintiff is entitled to

17  safeguards similar to those applicable when a Rule 12(b)(6)

18  motion is made.  See Sea Vessel Inc. v. Reyes, 23 F.3d 345, 347

19  (11th Cir. 1994), Osborn v. United States, 918 F.2d 724, 729 n.6

20  (8th Cir. 1990); see also 2-12 Moore's Federal Practice - Civil §

21  12.30 (2009).  The factual allegations of the complaint are

22  presumed to be true, and the motion is granted only if the

23  plaintiff fails to allege an element necessary for subject matter

24  jurisdiction.  Savage v. Glendale Union High Sch. Dist. No. 205,

25  343 F.3d 1036, 1039 n.1 (9th Cir. 2003), Miranda v. Reno, 238

26  F.3d 1156, 1157 n.1 (9th Cir. 2001). Nonetheless, district courts

27  "may review evidence beyond the complaint without converting the

28

motion to dismiss into a motion for summary judgment" when resolving a facial attack. Safe Air for Everyone,373 F.3d at 1039.

### B. Dismissal for Failure To State a Claim.

A dismissal motion under Fed. R. Civ. P. 12(b)(6) challenges a complaint's compliance with the federal pleading requirements. Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant "'fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To meet this requirement, the complaint must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Moreover, this court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007).[7]

"While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Iqbal, 556 U.S. at 679. Iqbal and Twombly therefore prescribe a two-step process for evaluation of motions to dismiss. The court first identifies the non-

---

[7] Citing Twombly, 550 U.S. at 555-56, Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("[I]t may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test" under Rule 12(b)(6)).

1   conclusory factual allegations, and then determines whether these
2   allegations, taken as true and construed in the light most
3   favorable to the plaintiff, "plausibly give rise to an
4   entitlement to relief."  Iqbal, 556 U.S. at 679.

5        "Plausibility," as it is used in Twombly and Iqbal, does not
6   refer to the likelihood that a pleader will succeed in proving
7   the allegations.  Instead, it refers to whether the non-
8   conclusory factual allegations, when assumed to be true, "allow[]
9   the court to draw the reasonable inference that the defendant is
10  liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.
11  "The plausibility standard is not akin to a 'probability
12  requirement,' but it asks for more than a sheer possibility that
13  a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S.
14  at 557).[8]  A complaint may fail to show a right to relief either
15  by lacking a cognizable legal theory or by lacking sufficient

16

17

18        [8] Twombly imposed an apparently new "plausibility" gloss on
    the previously well-known Rule 8(a) standard, and retired the
19  long-established "no set of facts" standard of Conley v. Gibson,
    355 U.S. 41 (1957), although it did not overrule that case
20  outright.  See Moss v. U.S. Secret Service, 572 F.3d 962, 968
    (9th Cir. 2009) (the Twombly Court "cautioned that it was not
21  outright overruling Conley ...," although it was retiring the "no
    set of facts" language from Conley).  The Ninth Circuit has
22  acknowledged the difficulty of applying the resulting standard,
    given the "perplexing" mix of standards the Supreme Court has
23  applied in recent cases.  See Starr v. Baca, 652 F.3d 1202, 1215
    (9th Cir. 2011) (comparing the Court's application of the
24  "original, more lenient version of Rule 8(a)" in Swierkiewicz v.
    Sorema N.A., 534 U.S. 506 (2002) and Erickson v. Pardus, 551 U.S.
25  89 (2007) (per curiam), with the seemingly "higher pleading
26  standard" in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336
    (2005), Twombly and Iqbal), cert. denied, 132 S. Ct. 2101 (2012).
27  See also Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011)
28  (applying the "no set of facts" standard to a Section 1983 case).

8

facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

### III. ARMY CORPS OF ENGINEERS

Plaintiffs allege that this court may exercise jurisdiction over their Due Process claims against the Corps pursuant to (1) Section 10(a) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, which provides for judicial review of agency actions, and (2) 28 U.S.C. § 1331, which provides for jurisdiction over claims arising under the Constitution and laws of the United States.  See Complaint ¶ 1.  The Corps moves to dismiss based upon its assertion that the claims against it are not ripe for judicial review.  See Corps Notice of Motion (ECF No. 10) at 1.  In the alternative, the Corps moves to dismiss plaintiffs' claims for failure to state a claim.

There are three distinct jurisdictional issues the court must therefore address.  First, whether a federal statute confers subject matter jurisdiction on this court for these claims.  Even where there is federal jurisdiction, since this is a suit against an agency of the United States, the court must consider, Second, whether the United States has waived its sovereign immunity for these claims.[9]  If so, the court must consider, Third, whether the claims are ripe for judicial review.

////

---

[9] Section 1331 "grants district courts original jurisdiction over 'all civil actions arising under the Constitution, laws or treaties of the United States,' but it does not waive sovereign immunity."  U.S. v. Park Place Associates, Ltd., 563 F.3d 907, 923-24 (9th Cir. 2009) (citing Hughes v. United States, 953 F.2d 531, 539 n.5 (9th Cir. 1992)).

**A.   Federal Jurisdiction.**

Plaintiffs allege that the issuance of the Corps' cease and desist order violates their rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution.   Plaintiffs also allege that 33 C.F.R. § 326.3(c), as applied to them, violates the Due Process Clause.   This court plainly has jurisdiction to hear and adjudicate these claims, pursuant to the general grant of federal court jurisdiction set forth at 28 U.S.C. § 1331. See, e.g., Bell v. Hood, 327 U.S. 678, 685 (1946) ("Thus, the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.   For this reason the district court has jurisdiction"); Verizon Maryland, Inc. v. Public Service Com'n of Maryland, 535 U.S. 635, 643 (2002) ("Verizon's claim thus falls within 28 U.S.C. § 1331's general grant of jurisdiction," because its right to recover "will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another") (citations and internal quotation marks omitted); U.S. v. Park Place Associates, Ltd., 563 F.3d 907, 923-24 (9th Cir. 2009) ("For example, 28 U.S.C. § 1331 grants district courts original jurisdiction over 'all civil actions arising under the Constitution, laws or treaties of the United States'").

**B.   Waiver of Sovereign Immunity.**

"'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'"   Department of Army v.

Blue Fox, Inc., 525 U.S. 255, 260 (1999) (quoting FDIC v. Meyer,

510 U.S. 471, 475 (1994)).  Section 702 (Section 10(a) of the

APA) provides that waiver of sovereign immunity for suits seeking

relief "other than money damages."  See, e.g., Bowen v.

Massachusetts, 487 U.S. 879, 891-892 (1988) ("the 1976 amendment

to § 702 was intended to broaden the avenues for judicial review

of agency action by eliminating the defense of sovereign immunity

in cases covered by the amendment").  It provides:

> A person suffering legal wrong because of
> agency action, or adversely affected or
> aggrieved by agency action within the meaning
> of a relevant statute, is entitled to
> judicial review thereof.  An action in a
> court of the United States seeking relief
> other than money damages and stating a claim
> that an agency or an officer or employee
> thereof acted or failed to act in an official
> capacity or under color of legal authority
> shall not be dismissed nor relief therein be
> denied on the ground that it is against the
> United States ….

5 U.S.C. § 702.  Here, plaintiffs seek injunctive and declaratory

relief for an alleged legal wrong inflicted by the Corps'

issuance of the CDO.[10]  Accordingly, the claims against the Corps

are covered by the sovereign immunity waiver.

---

[10] In addition, plaintiffs must be challenging "agency action" for
their claims to be within the waiver of sovereign immunity.  See
Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 882 (1990).
"Agency action" is defined to include "the whole or a part of an
agency rule, order, license, sanction, relief, or the equivalent
or denial thereof, or failure to act."  5 U.S.C. § 551 (emphasis
added); Lujan, 497 U.S. at 882.  Plaintiffs identify the cease
and desist order as the agency action they are challenging.
Defendants do not challenge this identification, and the court
finds that issuance of the cease and desist order is "agency
action" within the meaning of the waiver statute.

1    **C.   Ripeness.**

2    The Corps argues that this case is not "ripe" for judicial

3    review.  "Whether a claim is ripe generally turns on the fitness

4    of the issues for judicial decision and the hardship to the

5    parties of withholding court consideration." Richardson v. City

6    and County of Honolulu, 124 F.3d 1150, 1160 (9th Cir. 1997)

7    (citing PG&E v. State Energy Resources Conserv. & Devel. Comm'n,

8    461 U.S. 190, 201 (1983)), cert. denied, 525 U.S. 871 (1998).  As

9    the Corps points out, "[t]he 'central concern [of the ripeness

10   inquiry] is whether the case involves uncertain or contingent

11   future events that may not occur as anticipated, or indeed may

12   not occur at all.'" Richardson, 124 F.3d at 1150 (quoting 13A

13   Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal

14   Practice and Procedure § 3532 at 112 (2d ed. 1984)).

15   The Corps argues that plaintiffs' claims have not "'matured

16   sufficiently to warrant judicial intervention,'" because the CDO

17   "imposes no legal obligations or liability on its own [and thus]

18   Plaintiffs suffer no cognizable injury from its issuance."

19   Memorandum of Points and Authorities in Support of Federal

20   Defendant's Motion To Dismiss Complaint ("Corps Motion") (ECF

21   No. 10-1) at 14.  Specifically, the CDO is not enforceable on its

22   own, there are no separate penalties for violating it, and it can

23   only be enforced through a separate enforcement action.  Rather,

24   the Corps argues, the CDO "is merely a mechanism to notify an

25   alleged violator of the legal obligations imposed by the CWA, the

26   Corps belief that those obligations have been violated, and of

27   the potential consequences of such violations." Id.

28

1      The court cannot agree.  Even assuming that the CDO does not

2  impose any legal "obligations" or "liabilities," the Corps'

3  argument underestimates the force of a command from the United

4  States or its agency, the Army Corps of Engineers, and the injury

5  it can cause.  If the Corps, instead of issuing the CDO, had

6  burned plaintiffs' nursery to the ground in an effort to protect

7  the waters of the U.S., plaintiffs surely would have suffered an

8  injury, even though the Corps still would not have imposed any

9  legal "obligation" or "liability" on plaintiffs.

10      Having been commanded by the U.S. Government to stop their

11  activities, plaintiffs reasonably believed that they were

12  required to stop their farming activities, and thereby lost their

13  crop.  Plaintiffs reasonably interpreted the CDO to be an order

14  issued by the United States Government, not merely a suggested

15  course of conduct, nor a request for a voluntary cessation of

16  activities.  The Corps asserts that plaintiffs did not have to

17  obey the order it issued.  If plaintiffs were free to ignore an

18  unconditional command of the U.S. Government, or its agency, the

19  Corps, then the CDO should have said so.[11]  Conversely, if the CDO

20  were simply a "notification" to plaintiffs, then it should have

21  said so, rather than clothing itself as an "order" which carried

22  with it the authority to "prohibit" plaintiffs from continuing

23  their activities.  See 28 C.F.R. § 326.1(c).

24

25

26  [11] In essence, the government argues that although it
    (figuratively) held a gun to plaintiff's head and ordered him to
27  stop farming, plaintiff should have relied on the unstated fact
    that the gun could not be fired.
28

13

In its main brief, the Corps cites four cases in support of its view that the CDO had no legal effect and therefore is not yet subject to judicial review.  None of them are applicable to this case.  In Fairbanks North Star Borough v. U.S. Army Corps of Engineers, 543 F.3d 586 (9th Cir. 2008), cert. denied, 557 U.S. 919 (2009), plaintiffs sought "judicial review of a Corps' 'approved jurisdictional determination,' which is a written, formal statement of the agency's view that Fairbanks' property contained waters of the United States and would be subject to regulation under the CWA."  The case did not involve any order "directing" anyone to "cease and desist" from any activity, or "prohibiting" any activity, as the CDO in this case does.  Nor did plaintiff challenge the Corps' action as unconstitutional.  Fairbanks accordingly considered only whether the jurisdictional determination was "final agency action" under the APA, and determined that it was not.  Id., 543 F.3d at 591.[12]  "Final agency action" is not at issue in this case.[13]

---

[12] Fairbanks determined that "the Corps' issuance of an approved jurisdictional determination finding that Fairbanks' property contained waters of the United States did not constitute final agency action under the APA for purposes of judicial review." Id., 543 F.3d at 591.  Although the jurisdictional determination was "final," it did not determine any rights or obligations, nor would any "legal consequences" flow from it.  Id., at 593. Specifically, the determination "does not itself command Fairbanks to do or forbear from anything; as a bare statement of the agency's opinion, it can be neither the subject of 'immediate compliance' nor of defiance."  Id., at 594-95.  In contrast, the CDO at issue here plainly commands plaintiff to forbear from doing something.

[13] "Final agency action" is an issue for cases brought under 5 U.S.C. § 704, not, as here, Section 702.

1     Route 26 Land Dev. Ass'n v. U.S., 753 F. Supp. 532 (D.

2    Del. 1990), aff'd mem., 961 F.,2d 1568 (3rd Cir. 1992), the

3    second case, was also a challenge to the Corps' jurisdictional

4    "designation of two reaches of the Santa Cruz River in Arizona as

5    'traditional navigable waters.'"  This case too, turned on

6    whether the determination was "final agency action" within the

7    meaning of the APA.  The district court held that it was not, and

8    therefore declined review.  As noted, this case does not turn on

9    the existence of "final agency action," and thus Route 26

10   provides no guidance.

11        The two cases the government cites as specifically

12   precluding judicial review of the Corps' cease and desist orders

13   were decided under 5 U.S.C. § 704, not Section 702, and rule as

14   they do because the CDO does not constitute "final agency

15   action."  See Banks v. Page, 768 F. Supp. 809 (S.D. Fla. 1991),

16   vacated mem., 963 F.2d 385 (11th Cir. 1992); Howell v. U.S. Army

17   Corps of Engineers, 794 F. Supp. 1072 (D.N.M. 1992).  Neither of

18   these cases involved a federal constitutional challenge to agency

19   action.  In this case, "final agency action" is not required for

20   the court to address agency action that allegedly caused

21   plaintiff to suffer a federal constitutional injury.[14]

22   _____

23   [14] In any event, the latter two cases are not persuasive.  The
     cited district court decision in Banks was "vacated" by the
24   Eleventh Circuit, and therefore it is not clear that it should be
     cited at all.  See Banks v. Page, 963 F.2d 385 (11th Cir. 1992),
25   vacating mem., 768 F. Supp. 809 (S.D. Fla. 1991).  As for Howell,
     a central premise of its reasoning was that the Clean Water Act
26   precluded review of "compliance" orders.  However the Supreme
     Court has since held that compliance orders are subject to
27   judicial review.  Sackett v. EPA, 566 U.S. ___, 132 S. Ct. 1367
     (2012).
28

1    The only case the court was able to find that addressed

2    whether issuance of a Corps cease and desist order presented a

3    "ripe" controversy (outside the context of Section 704) is

4    Swanson v. U.S., 600 F. Supp. 802 (D. Idaho 1985), aff'd, 789

5    F.2d 1368 (9th Cir. 1986).  In Swanson, as here, plaintiff

6    received a letter from the Corps that "directed" her to "desist

7    from any further work."  Plaintiff there filed suit immediately,

8    citing "federal jurisdiction pursuant to 28 U.S.C. § 1331 and 28

9    U.S.C. § 2201."  The district court found that the matter was

10   ripe for judicial review:

11           In reference to the first dispute, the court
             has little difficulty finding that the issues
12           raised are ripe for judicial determination.
             Swanson has constructed improvements on a
13           portion of the lake in dispute and defendants
             have asserted their regulatory authority in
14           the form of the "stop work" letter sent to
             Swanson.  These facts give rise to an actual
15           and present controversy concerning the
             authority of the Corps to regulate the outer
16           perimeter of Lake Pend Oreille.  Since
             defendants have actually asserted their
17           jurisdiction and Plaintiff Swanson has
             opposed it, the matter is ripe for judicial
18           determination.

19

20   Swanson, 600 F. Supp. at 806.

21       In its Reply brief, and at oral argument, the Corps cited

22   Guatay Christian Fellowship v. County of San Diego, 670 F.3d 957

23   (9th Cir. 2011), cert. denied, 133 S. Ct. 423 (2012), in support

24   of its ripeness argument.  As the Corps points out, the Court

25   there did opine on the lack of consequences for not obeying a

26   cease and desist order issued by the County:

27           In this case, although strongly worded, the
             County's NOV and cease-and-desist order did
28

16

1
2
3
4
5
6
7
8
9
10

> not themselves deprive the Church of any interests.  The County would have had to bring an enforcement action in court in order to actually enforce the zoning regulations — and it in fact notified the Church of that in its May 2008 letter.  Without bringing the Church to court, the County had no power to, for example, padlock the building doors or make arrests, nor did it take any such action. Had the County brought the Church to court, the Church would have received notice, an opportunity to be heard, and an opportunity to present evidence; at the very least, we would have a record upon which to make a judgment about whether the Church had received sufficient process.

11  Guatay, 670 F.3d at 984.

12      Simply put, Guatay does not control this case.  The critical

13  distinguishing facts underlying Guatay are that (1) plaintiffs

14  there could have sought a permit allowing them to keep their

15  church where it was, and (2) they had available an administrative

16  appeal of the cease and desist order.  See Guatay, 670 F.3d at

17  965 ("The Church did not attempt to obtain a Use Permit before

18  doing so [filing the lawsuit].  Nor did it attempt to avail

19  itself of the appeals process, as provided in the County's

20  code").

21      In this case, unlike the situation in Guatay, nothing in the

22  Corps' CDO notified plaintiffs that the Corps could not take

23  action based upon the CDO alone, for example, shut down the farm

24  entirely.  Moreover, nothing in the Corps' CDO suggests that

25  plaintiffs had the option of seeking an after-the-fact permit.

26  To the contrary, the CDO is clear that the only course open to

27

28

1   plaintiffs is "[p]rompt voluntary restoration of the site."  CDO

2   at 2.  The CDO also makes no mention of any appeals process.

3       The Corps' regulations, meanwhile, do permit after-the-fact

4   permits, but only "[f]ollowing the completion of any required

5   initial corrective measures."  33 C.F.R. § 326.3(e)(1).  Whether

6   this means that plaintiffs must promptly restore the site before

7   they can seek a permit is not clear.  Guatay certainly shows the

8   Corps how its CDO procedure could be modified to comply with Due

9   Process standards.  As that process was not used in this case,

10  however, Guatay does not help the Corps.

11      This court does not doubt that the Corps needs the

12  flexibility to "notify" landowners that they are in violation of

13  the law, without having to go to court first.  Had they issued a

14  "notification," they would be in the same position as the State

15  defendants, and could now argue successfully that the matter was

16  not ripe for judicial review.  However, the Corps did not

17  "notify" plaintiffs they were operating in violation of the law,

18  it commanded plaintiffs to stop their activities.  Since the

19  Corps did so without granting plaintiffs any ability to challenge

20  this command, either before or after issuance of the CDO – other

21  than requiring plaintiffs to wait around indefinitely to see if

22  the Corps would file an enforcement action – plaintiffs are

23  entitled to judicial review now.

24      The Corps asserts that plaintiffs have another

25  administrative option they should be required to exhaust before

26  proceeding to court.  Specifically, the Corps suggests that

27  plaintiffs can wait until the Corps files an enforcement action.

28  That is entirely inadequate, as plaintiffs are being deprived now

18

of the right to farm their land for an indefinite period, with no
assurance that an enforcement action will ever be filed, thus
completely depriving them of the opportunity to challenge the
CDO.

Plaintiffs' claims are ripe for judicial review.

**D.   Due Process.**

In order to state a claim under the Due Process clause of
the Fifth Amendment to the U.S. Constitution, plaintiff must
first allege facts showing that he has a "liberty" or "property"
interest at stake.  <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332 (1976)
("Procedural due process imposes constraints on governmental
decisions which deprive individuals of 'liberty' or 'property'
interests within the meaning of the Due Process Clause of the
Fifth or Fourteenth Amendment").

Plaintiffs allege a property and/or liberty interest in the
land they own, and their right to use it for wheat farming.
Complaint ¶¶ 45-47.  The government does not contest this
assertion.

Plaintiffs must then allege that they were deprived of this
interest by some decision or action of the federal government.
<u>Id.</u>  As discussed above, the action alleged is that of issuing
the cease and desist order.  The Corps argues that the CDO did
not deprive plaintiffs of their property or legal interest
because the CDO:

> is merely a mechanism to notify an alleged
> violator of the legal obligations imposed by
> the CWA, the Corps' belief that those
> obligations have been violated, and of the
> potential consequences of such violations.

1
2
3
4
                The Corps' direction to comply with the
requirements of the Act is only enforceable
through a subsequent enforcement action.
Because the Corps' letter imposes no legal
obligations or liability on its own,
Plaintiffs suffer no cognizable injury from
its issuance.

5
6
U.S. Motion To Dismiss, ECF No. 10-1 at 14.

7
8
9
10
11
12
13
14
    As discussed above, the Corps disagrees with the plain words of its own CDO.  The Corps ordered plaintiffs to stop their activities, and plaintiffs complied with the order, reasonably believing that they were not free to ignore a command of the United States Government, or its agency, the Army Corps of Engineers.  In so complying, plaintiffs lost their crop, and to the degree they are still complying, they have lost their right to farm or use their land.

15
16
17
18
19
20
21
22
23
24
25
26
    The Corps' purported mechanisms for challenging its actions are, as discussed above, inadequate.  Forcing plaintiffs to wait idly about while the Corps decides whether to bring an enforcement action has the effect of continuing to deprive plaintiffs of the use of their property, without end.  Forcing plaintiffs to file for an after-the-fact permit makes no sense, as plaintiffs assert that they have the right to conduct their activities without the permit, the CDO gave plaintiffs no hint that this was available, and the after-the-fact permit process appears to require plaintiffs to do exactly what this lawsuit seeks to avoid, namely, forcing them to restore the site to the Corps' satisfaction.

27
28
    Plaintiffs have stated a claim under the Due Process Clause.
////

1

### IV.   STATE DEFENDANTS

2       Plaintiffs sue officials of the Board in their official

3   capacities.   The sole violation alleged is that the Board failed

4   to provide a hearing either before or after issuing the NoV.

5       Plaintiffs allege that this court may exercise jurisdiction

6   over their Due Process claims against the State pursuant to

7   (1) 28 U.S.C. § 1331, which provides for jurisdiction over claims

8   arising under the Constitution and laws of the United States, and

9   (2) the doctrine set forth in Ex parte Young, 209 U.S. 123

10  (1908), which permits state officials to be sued to enjoin

11  constitutional violations.   See Complaint ¶¶ 1 & 10-16.

12      The State moves to dismiss plaintiffs' claims as barred by

13  sovereign immunity, and because they are not ripe for judicial

14  review.   See State Notice of Motion (ECF No. 9) at 2.

15          **A. Sovereign Immunity.**

16      "A state's sovereign immunity from suit in federal court

17  normally extends to suits against its officers in their official

18  capacities."   Cardenas v. Anzai, 311 F.3d 929, 934 (9th

19  Cir. 2002).   This action against California officers in their

20  official capacities is therefore barred by sovereign immunity

21  unless an exception applies.   Plaintiffs assert that they may sue

22  under the exception articulated in Ex parte Young, 209 U.S. 123

23  (1908).   "Under the Ex parte Young doctrine, a plaintiff may

24  maintain a suit for prospective relief against a state official

25  in his official capacity, when that suit seeks to correct an

26  ongoing violation of the Constitution or federal law."   Cardenas,

27  311 F.3d at 934-35.

28

1    The Board argues that plaintiffs seek retrospective relief,

2    not prospective relief, and therefore the claim is barred by

3    Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 281 (1997),

4    Edelman v. Jordan, 415 U.S. 651, 668 (1974), and Green v.

5    Mansour, 474 U.S. 64, 68-69 (1985).  The Board is incorrect.  The

6    NoV is still in effect, and whatever allegedly unconstitutional

7    mischief it is causing, it is still causing.  Plaintiffs seek to

8    correct that on-going violation.  Nothing in the cited cases says

9    otherwise.

10    Coeur d'Alene denied plaintiffs' claim on sovereign immunity

11    grounds in the "particular and special circumstances" where

12    Idaho's sovereignty was threatened by the lawsuit.  It appears to

13    have no application to this lawsuit.  Edelman denied plaintiffs'

14    claims because they required the retroactive payment of funds

15    from the state's treasury.  Here, the only requested relief is

16    prospective injunctive relief.  Green clarified that it was the

17    "compensatory or deterrence interests" of retrospective relief

18    that failed to overcome the state's sovereign immunity.  The

19    relief sought here is not compensatory or deterrent, it only

20    seeks to put a halt to allegedly unconstitutional conduct.

21    Sovereign immunity does not bar the suit against the Board

22    officials.

23    **B.    Ripeness.**

24    Plaintiffs assert that their receipt of the NoV caused them

25    to abandon their crop and therefore they were deprived of their

26    property rights.  There are at least two problems with this

27    assertion.  First, in their Opposition, plaintiffs concede that

28

22

they abandoned the crops because of their receipt of the <u>federal</u>
CDO, not the state NoV.  Plaintiffs' Combined Opposition to
Federal Defendant's and State Defendants' Motions To Dismiss
Complaint ("Pl. Oppo.") (ECF No. 15) at 19 ("[i]t is evident from
the allegations of the Complaint and the text of the Order [the
CDO] that the receipt of this document caused Duarte to abandon
the wheat crop and their farming activities on the Property,
depriving them of their property interests as a result").  Thus,
plaintiffs' interpretation of their own complaint indicates that
only the federal action deprived them of their rights, not the
Board's.

     Second, even if the court were to ignore plaintiffs'
concession, and accept that the NoV caused plaintiffs to abandon
their crop, plaintiffs have cited no authority that their own
decision to abandon their crop is a deprivation of their property
rights under the Due Process clause.  Plaintiffs are attempting
to convert their own conduct into state action.  To prevail on
the Due Process claim, plaintiffs must show that the <u>Board</u> or its
officials deprived them of their property without due process.

     Plaintiffs identify nothing in the NoV or the statute or
regulations governing the NoV that impaired their property,
stopped them from farming, or had any other legal consequences.
Instead, plaintiffs assert that the very existence of the NoV
impairs their property rights, and analogizes the NoV to an <u>ex</u>
<u>parte</u> attachment or lien against the property, citing <u>Connecticut</u>
<u>v. Doehr</u>, 501 U.S. 1, 12 (1991), and <u>Tri-State Dev. V. Johnston</u>,
160 F.3d 528, 531 (9th Cir. 1998).  Pl. Oppo. at 16.

1    Plaintiffs do not offer any explanation for why this analogy
2    is valid.  They do not argue that the NoV is a lien, attachment
3    or encumbrance of any kind such as would impair their <u>ability</u> to
4    alienate the property.  Instead, they state that they would have
5    to <u>disclose</u> the NoV in the event they tried to sell or lease the
6    property.  The cases plaintiffs cite, however, address legal
7    <u>impairments</u> to the seller's right to his property, not the
8    possibility that the market value of the property might be
9    affected by required disclosures.

10    Plaintiffs buttress their argument by asserting that the NoV
11    "depriv[es] Duarte of the vested right to use the Property in
12    accordance with its zoning," namely wheat farming.  ECF No. 15 at
13    18.  But it does no such thing.  The NoV does not divest
14    plaintiffs of anything, nor does it order them to stop doing
15    anything.

16    The order <u>notifies</u> plaintiffs of the Board's view that they
17    are in violation of the law.  The only thing it commands is that
18    plaintiffs submit a plan to mitigate the impacts of the
19    discharges.  However, (1) nothing in the letter threatens any
20    consequences for failure to submit such a plan, (2) plaintiffs
21    identify nothing in the law or regulations that authorizes any
22    such consequences, and (3) plaintiffs do not allege that in fact
23    any such consequences have occurred.

24    In short, the Board has done nothing to plaintiffs yet.  The
25    lawsuit against the Board is not ripe for adjudication in federal
26    court.
27    ////
28    ////

1                           **IV.   CONCLUSION**

2        For the reasons stated above, the court orders as follows:

3           1.   The Corps' motion to dismiss for lack of federal

4 jurisdiction, is **DENIED**;

5           2.   The Corps' motion to dismiss for failure to state

6 a claim is **DENIED**; and

7           3.   The State defendants' motion to dismiss for lack

8 of federal jurisdiction, is **GRANTED**.   This lawsuit is hereby

9

10 **DISMISSED** without prejudice, as to defendants Longley, Moffitt,

11 Constantino, Meraz, Ramirez, Schneider and Creedon, because the

12 matter is not yet ripe for judicial review.

13        IT IS SO ORDERED.

14        DATED:   April 22, 2014.

15

16

17

18

19                      LAWRENCE K. KARLTON

20                      SENIOR JUDGE
                       UNITED STATES DISTRICT COURT

21

22

23

24

25

26

27

28