1  M. REED HOPPER (Bar No. 131291)
   ANTHONY L. FRANÇOIS (Bar No. 184100)
2  Pacific Legal Foundation
   930 G Street
3  Sacramento, CA  95814
    (916) 419-7111 (p)
4   (916) 419-7747 (f)
   mrh@pacificlegal.org
5  alf@pacificlegal.org
   *See next page for additional attorneys for*
6  *Plaintiffs and Counterclaim-Defendants*

7

8              UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA

10  DUARTE NURSERY, INC., a California        No.  2:13−CV−02095−KJM−AC (TEMP)
    Corporation;  and JOHN DUARTE, an
11  individual,                               **MEMORANDUM IN SUPPORT OF
                                              MOTION FOR RECONSIDERATION,
12          Plaintiffs,                       OR FOR CERTIFICATION OF
                                              INTERLOCUTORY APPEAL, AND
13  v.                                        FOR A STAY**

14
    UNITED STATES ARMY CORPS OF
15  ENGINEERS,

16          Defendant.

17

18
    UNITED STATES OF AMERICA
19          Counterclaim- Plaintiff,

20
    v.
21
    DUARTE NURSERY, INC., a California
22  Corporation;  and JOHN DUARTE, an
    individual,
23
            Counterclaim- Defendants.
24

25

26

27

28

*Additional attorneys for*
*Plaintiffs and Counterclaim-Defendants*

DAVID M. IVESTER (Bar No. 76863)
PETER PROWS (Bar No. 257819)
Briscoe Ivester & Bazel LLP
155 Sansome Street, Seventh Floor
San Francisco, CA  94104
 (415) 402-2700 (p)
 (415) 398-5630 (f)
divester@briscoelaw.net
pprows@briscoelaw.net

GERALD E. BRUNN (Bar No. 107004)
Law Offices of Brunn & Flynn
928 12th Street, Suite 200
Modesto, CA  95354
 (209) 521-2133 (p)
 (209) 521-7584 (f)
gbrunn@brunn-flynn.com

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................1

II.   LEGAL STANDARD...........................................................................................2

III.   THE PLOWING REGULATION...........................................................................3

    A.   Reconsideration.........................................................................................3

    B.   Certification of Interlocutory Appeal.........................................................5

IV.   *LOS ANGELES COUNTY FLOOD CONTROL DISTRICT* AND *MICCOSUKEE* ......6

    A.   Reconsideration.........................................................................................6

    B.   Certification of Interlocutory Appeal.........................................................7

V.   RESPONSIBLE CORPORATE OFFICER DOCTRINE.......................................7

    A.   Reconsideration.........................................................................................7

    B.   Certification of Interlocutory Appeal.........................................................8

VI.   MATERIAL DISPUTES OF FACT ......................................................................8

VII.   THE CASE SHOULD BE STAYED .....................................................................9

VIII.   CONCLUSION...................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) ................................................... 2

*Borden Ranch Partnership v. U.S. Army Corps of Eng'rs*, 261 F.3d 810 (9th Cir. 2001)........ 1, 5, 6, 7

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962)................................................. 10

*Illinois v. Commonwealth Edison Co.*, 490 F.Supp. 1145 (N.D. Ill. 1980) ........................ 8

*L.A. Cty. Flood Control Dist. v. NRDC, Inc.*, 133 S.Ct. 710 (2013) ......................... 1, 6

*Meyer v. Holley*, 537 U.S. 280 (2003) ...................................................... 1, 7, 8

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399 (D.C. Cir. 1998) ................... 5

*People v. Celotex Corp.*, 516 F.Supp. 716 (C.D. Ill. 1981) .................................... 8

*Rapanos v. United States*, 547 U.S. 715 (2006)............................................... 8

*S. Fla. Water Management Dist. v. Miccosukee Tribe*, 541 U.S. 95 (2004)..................... 1, 6

*Steering Comm. v. United States*, 6 F.3d 572 (9th Cir. 1993) .......................... 5, 7, 8

*Smith v. Massachusetts*, 543 U.S. 462 (2005)................................................ 2

*United States v. LoRusso*, 695 F.2d 45 (2d Cir. 1982)........................................ 2

*Winding v. Allstate Ins. Co.*, No. CIV S-09-03526 KJM-KJN, 2012 U.S. Dist. LEXIS 61579; 2012 WL 1565674 (E.D. Cal. May 2, 2012) ..................................................... 3, 5

**Statutes**

28 U.S.C. § 1292(b) ......................................................................... 2

**Regulations**

33 C.F.R. § 323.4(a)(1)(ii) ................................................................. 4, 9

33 C.F.R. § 323.4(a)(1)(iii)(D) ............................................................ 1, 3

**Rules**

Local Rule 230(j) ........................................................................... 2

**Other Authorities**

45 Fed.Reg. 33290 (May 19, 1980) ........................................................... 4

Corps Regulatory Guidance Letter 86-01 .................................................... 4

House Agriculture Committee, *Public Hearing To Consider The Impacts Of The EPA's Actions On The Rural Economy* (Feb. 11, 2016), *available at* https://www.youtube.com/watch?v=AkRnOjSgkng ............................................ 4

# I.    INTRODUCTION

The Court should reconsider its order granting the Government's motion for summary judgment on its Clean Water Act counterclaim, because the order does not address the issue that both sides agree is the key to this case:  whether Duarte "plowed" a field.  For more than 40 years—in regulations, guidance, and public statements—the Government has made clear that the simple act of plowing cannot violate the Act, because plowing causes no "discharge".  The regulation *excludes* "plowing" from the defined term "discharge".  (33 C.F.R. § 323.4(a)(1)(iii)(D).)  To his credit, at oral argument on the motions here, counsel for the Government conceded that, if what Duarte did was "plowing" (as defined in the Government's regulations), then that plowing "doesn't require a permit or violate" the Act.  (Transcript (dkt. #173) at 31:21-24.)  So if Duarte plowed, it cannot be liable.

The Court's order, however, does not address this issue.  Although the order quotes the plowing regulation (at page 33:3-10), and characterizes the tilled areas as "plowed" (at page 11:1), it says not a word about whether the plowing regulation operates here to establish that Duarte's plowing was not a discharge.  The Court should reconsider its order to analyze whether Duarte "plowed", or else certify its order for interlocutory appeal of this important issue.

The Court's order also gives short shrift to two recent Supreme Court decisions—*L.A. County Flood Control District* and *Miccosukee*—that effectively overrule the Ninth Circuit's earlier *Borden Ranch* case, upon which the order heavily relies.  Those Supreme Court cases hold that merely moving a pollutant within the same waterbody causes no discharge.  The order's conclusion, citing *Borden Ranch*, that the movement of previously plowed "soil … horizontally" within waters was a discharge (Order at 28:26-29:19) cannot be squared with these Supreme Court cases.  The Court should reconsider the application of these Supreme Court cases, or else certify an interlocutory appeal.

The Court's order also does not cite or apply the Supreme Court case, *Meyer v. Holley*, that places strict limits on when corporate officers may be held personally responsible for the acts of their companies.  The Court should also reconsider whether that decision bars Mr. Duarte from being held personally liable for the plowing done by his company, or else certify that issue for appeal.

1

The Court's order also does not acknowledge the evidence Duarte submitted that create genuine disputes of fact precluding summary judgment for the Government. Those disputes also merit reconsideration.

If the Court does certify its order for interlocutory appeal, it should also stay this litigation pending the appeal.

## II.    LEGAL STANDARD

As the Court noted in its order, "the interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment". (Order at 15:17-19 (quoting *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996)).)[1] The Court should reconsider its order to address three central arguments that Duarte raised, but which the order did not address, or gave short shrift to, and to consider the various disputes of material fact that preclude summary judgment for the Government.

If the order is not reconsidered, then it presents an unusually strong case for certification for interlocutory appeal. A district may certify an interlocutory order, as here, for an interlocutory appeal when the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." (28 U.S.C. § 1292(b).) This Court has summarized the standard for certification of an interlocutory appeal as involving "three factors":

> Section 1292 identifies three factors that must be present in order for the court to certify an appeal. First, the issue to be certified must involve a controlling issue of law. [Citation.] An issue is "controlling" if "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." [Citations.] Second, there must be substantial ground for difference of opinion on that issue. … Third, an interlocutory appeal must be likely to materially speed the termination of the litigation. This factor is linked to whether an issue of law is "controlling," in that the court should

---

[1] Reconsideration has been described as part of the district court's "inherent" authority. (*Smith v. Massachusetts*, 543 U.S. 462, 475 (2005) (Ginsburg, J., dissenting) (quoting *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982)).) The following information for reconsideration is required by Local Rule 230(j): (1) the cross-motions for which reconsideration is sought were made to Judge Mueller; (2) Judge Mueller granted the Government's motions, and denied Duarte's motions; (3) this motion is made on the grounds that the order does not address, or gave short shrift to, three key arguments Duarte made, and does not acknowledge Duarte's evidence creating material disputes of fact; and (4) Duarte made these key arguments in its motions.

consider the effect of a reversal by the court of appeals on the
management of the case.  [Citation.]

(*Winding v. Allstate Ins. Co.*, No. CIV S-09-03526 KJM-KJN, 2012 U.S. Dist. LEXIS 61579 at *4-
*5; 2012 WL 1565674 (E.D. Cal. May 2, 2012).)  The issues of whether plowing causes a discharge
under the plowing regulation, whether moving previously plowed soil within a wetland causes a
discharge in light of two recent Supreme Court cases, and of whether the responsible-corporate-
officer doctrine apply here, meet these three factors.  If the order is not reconsidered, it should be
certified for interlocutory appeal.

### III.     THE PLOWING REGULATION

#### A.     Reconsideration

As the Court's order correctly notes, the Government, as part of its prima facie case, must
establish that Duarte caused a "discharge".  (Order at 24:5.)  The plowing regulation, 33 C.F.R. §
323.4(a)(1)(iii)(D), prescribes that "plowing … will never involve a discharge".  Counsel for the
Government conceded, at oral argument, that "if it's plowing as defined [in the regulation]", then
there cannot be liability:

> [COUNSEL FOR DUARTE]:  The government, as part of its prima
> facie case, has to show that there was a discharge.  That's the key word
> in the Clean Water Act. … But the plowing regulation,
> 323.4(a)(1)(iii)(D), says that plowing as described above will never
> involve a discharge. …
>
> THE COURT: Is that -- does the government agree with that, that if
> it's plowing as defined in 33 CFR it doesn't require a permit or
> violate?
>
> [COUNSEL FOR THE GOVERNMENT]: That's what the regulation
> states. We submit that for a number of reasons what they did was not
> plowing as defined in that regulation.

(Transcript (dkt. #173) at 30:25-32:1.)[2]

The Government meant what it said when it promulgated the plowing regulation, explaining
that "[p]lowing is not dredging or filling" and  "plowing … is not a point source".  (Dkt. #150 at

---

[2] The plowing regulation defines the term to include all "primary tillage" that does not convert
waters to "dry land".  (33 C.F.R. § 323.4(a)(1)(iii)(D).)  The Government did not seriously dispute
that there was primary tillage here.  The Government's sole reason for why Duarte did not plow
came down to the goofy argument that the furrows and ridges created by the tillage were "small
mountain ranges (microtopographic high spots)" that amounted to "mini uplands".  (Dkt. #152 at
14:14-17.)  Duarte's reply brief in support of its motion for summary judgment (dkt. #156 at 5:1-
7:10) showed why this argument was wrong.

1:24-4:11 (recounting 40-year history of plowing regulation).)  Regulatory guidance from the

Government explains that, "[s]ince 1975, Corps regulations have excluded 'plowing...for production

of food, fiber, and forest products' from the definition of a discharge of dredged or fill material."

(Dkt. #163-1 (Corps Regulatory Guidance Letter 86-01).)[3]  So if Duarte plowed, within the meaning

of the regulation, then it caused no discharge and cannot have violated the Act.

The Court's order quotes the plowing regulation.  (Order at 33:3-10.)  But the order contains

no analysis of whether that regulation applies here.  Because both sides agree that the issue is

dispositive, and it went unaddressed in the Court's order, the Court should reconsider whether

Duarte plowed, within the meaning of the plowing regulation.

To be sure, the Court's order does address whether Duarte's "farming activities" were

"established".  (Order at 33:26-34:13.)  But this misses the issue.  The Government's regulations

make clear that if an activity causes no discharge, then it is irrelevant whether the activity is

"established":

> If an activity … does not involve a discharge, it does not need a
> section 404 permit, whether or not it is part of an established farming
> … operation.

(33 C.F.R. § 323.4(a)(1)(ii).)[4]  Because the Government's regulations prescribe that plowing causes

no discharge, it matters not whether Duarte's plowing was part of an established farming operation.

If the Court does not reconsider the application of the plowing regulation, it should certify

---

[3] The current EPA administrator likewise recently testified that the plowing regulation was "intended to assure farmers that their plowing would not be regulated under the Clean Water Act":

> [CONGRESSMAN LAMALFA]:  Current Clean Water Act
> regulations provide that "plowing" will never involve a discharge
> unless it changes any area of waters of the United States to dry land.
> …
> Was this regulation intended to assure farmers that their plowing
> would not be regulated under the Clean Water Act?
>
> [EPA ADMINISTRATOR MCCARTHY]: That would be its intent,
> yes.

(House Agriculture Committee, *Public Hearing To Consider The Impacts Of The EPA's Actions On The Rural Economy* (Feb. 11, 2016), *available at* https://www.youtube.com/watch?v=AkRnOjSgkng (starting at 2 hour, 48 minute, mark).)

[4] In response to comments, EPA "deleted" any requirement "that plowing take place on 'established' farm or forest lands" to be excluded from the definition of a discharge.  (45 Fed.Reg. 33290, 33473 (May 19, 1980).)

4

the issue for interlocutory appeal.

**B.    Certification of Interlocutory Appeal**

The first factor—whether resolution of the issue could materially affect the outcome of litigation in the district court—is met because both sides agree that if Duarte plowed then there can be no liability.

The second factor—whether there is substantial ground for difference of opinion on the issue—is also met. The Government for more than 40 years had maintained that plowing, as defined in the regulation, causes no discharge.  But here, the Government argues, and the order effectively holds, that all plowing in any water is a discharge even if no wetlands are destroyed—a blockbuster holding that may have serious nationwide ramifications.  The *Borden Ranch* decision, upon which the order relies, did not cite or discuss the plowing regulation.  The deep ripping at issue in *Borden Ranch*, which obliterated wetlands, is quite different from the mere "four to six inches" of plowing here (order at 10:11) that caused no significant harm (dkt. #150 at 5:17-6:15).[5]  This issue is ripe for immediate appellate review.

The third factor—whether an interlocutory appeal is likely to materially speed the termination of the litigation—is also met.  This factor, as this Court has noted, is linked to whether a "controlling" issue is involved in the order.  (*Winding* at *5.)  Because, as discussed above, the plowing issue is controlling, this third factor is met.  The Ninth Circuit has also recognized that this factor is met when an order resolves liability, and leaves just the remedy for trial, because the interlocutory-appeals statute "was primarily enacted to avoid the delay and expense engendered by taking further evidence on the question of damages, when such an undertaking might be unnecessary if the decree as to liability should be reversed".  (*Steering Comm. v. United States*, 6 F.3d 572, 575 n.1 (9th Cir. 1993), internal citation and quotation marks omitted.)  Here, if the Court's finding of

---

[5] *Borden Ranch* was a divided opinion by the Ninth Circuit that clearly conflicted with *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399 (D.C. Cir. 1998).  (*Borden Ranch Partnership v. U.S. Army Corps of Eng'rs*, 261 F.3d 810, 819-820 (Gould, J., dissenting) (noting conflict with *Nat'l Mining* on whether "the return of soil in place after deep plowing is … a 'discharge'").)  The U.S. Supreme Court took *Borden Ranch*, but split 4-4 on the merits, with Justice Kennedy recused.  (537 U.S. 99.)  The fact that the real deep ripping in *Borden Ranch* caused such division in the appellate court, underscores why the shallow plowing here is ripe for immediate appellate review.

1    liability is reversed, then a trial as to remedy will be unnecessary, and the termination of the

2    litigation will have been materially advanced.

3          Because all three factors are met, this Court should certify this issue for interlocutory appeal.

4    **IV.    *LOS ANGELES COUNTY FLOOD CONTROL DISTRICT* AND *MICCOSUKEE***

5          **A.    Reconsideration**

6          The Court's order concluded, citing *Borden Ranch*, that the movement of previously plowed

7    "soil … horizontally" within waters was a discharge.  (Order at 28:26-29:19.)  The order

8    distinguished the recent Supreme Court cases narrowly interpreting "discharge", *Los Angeles County*

9    *Flood Control District* and *Miccosukee*, on the grounds that "they concern repositing water and

10   not soil."  (Order at 29:10-11, citing *L.A. Cty. Flood Control Dist. v. NRDC, Inc.*, 133 S.Ct. 710, 713

11   (2013) & *S. Fla. Water Management Dist. v. Miccosukee Tribe*, 541 U.S. 95 (2004).)  But those

12   cases did not turn on whether water versus soil was redeposited; they turned on interpreting the same

13   statutory language at issue in this case, i.e., whether moving a pollutant from one part of a navigable

14   water to another part of that same water constituted a "discharge" under the "text" of the Act:

> [W]e held in [*S. Fla. Water Management Dist. v. Miccosukee Tribe*, 541 U.S. 95 (2004)] that the transfer of polluted water between "two parts of the same water body" does not constitute a discharge of pollutants under the [Act].  We derived that determination from the [Act's] text, which defines the term "discharge of a pollutant" to mean "any *addition* of any pollutant to navigable waters from any point source." 33 U.S.C. §1362(12) (emphasis added).  Under a common understanding of the meaning of the word "add," no pollutants are "added" to a water body when water is merely transferred between different portions of that water body.  See Webster's Third New International Dictionary 24 (2002) ("add" means "to join, annex, or unite (as one thing to another) so as to form an increase (as in number, size, or importance) or so as to form one aggregate").  "As the Second Circuit [aptly] put it . . . , '[i]f one takes a ladle of soup from a pot, lifts it above the pot, and pours it back into the pot, one has not "added" soup or anything else to the pot.' *Miccosukee*, 541 U.S., at 109-110.

(*L.A. Cty. Flood Control Dist.*, 133 S.Ct. at 713, some internal citations omitted.)

25          These Supreme Court cases limit, or effectively overrule, the Ninth Circuit's prior decision in

26   *Borden Ranch*, upon which the order heavily relies.  If, as the order concludes, plowing soil in

27   waters is a discharge, then the previously plowed soil on Duarte's property was already a pollutant.

28   Replowing that previously plowed soil added no new pollutants to those waters, and thus caused no

6

1  discharge.  The Court should reconsider the effect of these two Supreme Court cases on *Borden*

2  *Ranch.*

3         **B.**     **Certification of Interlocutory Appeal**

4        If it does not reconsider the order, the Court should certify this issue for interlocutory appeal.

5  The issue of whether plowing previously plowed soil within a water is a discharge is conclusive as to

6  Duarte's liability.  It is also an issue upon which there is substantial ground for difference of opinion,

7  because the Supreme Court cases interpreted the key statutory term at issue in this case (discharge)

8  more narrowly than the Ninth Circuit's earlier opinion in *Borden Ranch*, and no appellate courts

9  have considered the effect of those two Supreme Court cases on *Borden Ranch*.  And an

10  interlocutory appeal would materially speed the termination of the litigation, both because the issue

11  is conclusive and because the order resolves liability and leaves only the remedy for trial.  (*See*

12  *Steering Comm.*, *supra.*)

13        Certification of an interlocutory appeal on this issue should be granted.

14       **V.**      **RESPONSIBLE CORPORATE OFFICER DOCTRINE**

15        **A.**     **Reconsideration**

16        The Court's order concludes that Mr. Duarte is personally liable for the acts of his company,

17  because he is a "responsible corporate officer".  (Order at 26:11-24.)  But the order does not cite or

18  address the key Supreme Court case on this issue, *Meyer v. Holley*, 537 U.S. 280 (2003).

19        *Meyer* held that Congressional "silence" on holding corporate officers personally responsible

20  for the acts of their corporations is insufficient, as a matter of law, for those officers' personal

21  liability.  (*Id.* at 286, 290.)  The responsible-corporate-officer doctrine may apply "only where

22  Congress has specified that such was its intent."  (*Id*. at 287.)

23        The order acknowledges that the Act's civil enforcement provision is silent as to the personal

24  responsibility of corporate officers.  (Order at 25:9-10.)  The order cites nothing to suggest that

25  Congress intended corporate officers to be held civilly responsible for alleged violations of the Act

26  by their companies.  Because Congress was silent in the Act as to the civil responsibility of corporate

27  officers for the acts of their companies, and there is no evidence of Congressional intent otherwise,

28  Mr. Duarte cannot be held personally liable for the acts of his company.

7

The Court should reconsider its order to address *Meyer*.

**B.     Certification of Interlocutory Appeal**

The three factors for certification are also met for the responsible-corporate-officer doctrine issue.

First, resolution of the issue would materially affect the outcome of the litigation, because the issue controls whether Mr. Duarte is even properly a party to the counterclaim.

Second, there is substantial ground for difference of opinion on the issue.  The order correctly notes (at 25:11) that the Ninth Circuit has not yet addressed the issue.  The order also acknowledges that the Act's civil enforcement provision is silent as to the personal responsibility of corporate officers (Order at 25:9-10), which silence the Supreme Court, in *Meyer*, held should be insufficient, as a matter of law, for those officers' personal liability (537 U.S. at 286, 290).  While the Sixth Circuit, in an older case, and some recent unpublished district court cases, which do not cite or apply *Meyer*, have applied the doctrine in civil enforcement actions under the Act (Order at 25:11-26:10), other courts have held that corporate officers may not be held personally liable in enforcement actions, under analogous provisions of the Clean Air Act, where the authorizing subsection of the statute does not provide for such personal liability (*Illinois v. Commonwealth Edison Co.*, 490 F.Supp. 1145, 1148 (N.D. Ill. 1980); *People v. Celotex Corp.*, 516 F.Supp. 716, 719 (C.D. Ill. 1981)).  To the extent that *Meyer* did not resolve this issue in Duarte's favor, there remains at least substantial ground for difference of opinion.

Third, an interlocutory appeal of this issue would materially speed the termination of this litigation, both because the issue is controlling and because it resolves liability, leaving only the issue of remedy for trial.  (*See Steering Comm*, *supra*.)

Certification of an interlocutory appeal on this issue should be granted.

**VI.     MATERIAL DISPUTES OF FACT**

The order overlooks several material factual disputes that preclude summary judgment for the Government:

*Navigable Waters.*  The order concludes that Duarte has not presented evidence creating a material factual dispute about whether any of the waters or wetlands on the property meet Justice

8

Kennedy's "significant nexus" test in *Rapanos v. United States*, 547 U.S. 715 (2006) (Kennedy, J., concurring).  (Order at 30:28-31:3.)  No significant nexus exists where effects on downstream water quality are "speculative or insubstantial"—such as for features "remote from any navigable-in-fact water and carrying only minor water volumes toward it".  (*Id.* at 780-781.)  Whether a significant nexus exists must be determined "on a case-by-case basis".  (*Id.* at 782.)  Duarte presented evidence that the waters and wetlands on the property are remote from the navigable-in-fact Sacramento River, carry only minor water volumes toward it, and are not similarly situated to other lands in the region.  (Dkt. #150 at 9:16-10:3 (citing evidence).)

*Normal farming practices exemption*.  The order concludes that Duarte has not provided evidence "to show grazing is analogous to the farming activity they conducted beginning in 2012." (Order at 34:9-11.)  But Duarte did provide evidence that the cattle grazing mixed the soil "as much as the cultivation event that occurred on this property."  (Dkt. #130-1 at 3.)  Duarte also provided evidence that Duarte's tillage is "part of a conventional rotational cycle", within the meaning of the normal-farming-practices exemption (33 C.F.R. § 323.4(a)(1)(ii)), because, in this region, it is conventional for a landowner to follow an irregular but persistent cycle of grazing and then cultivating a piece of farmland.  (Dkt. #150 at 14:11-18 (citing evidence).)

*Hydrological modification*.  The order relies on evidence submitted by the Government to conclude that the plowing caused "substantial changes in the hydrological regime, which are prohibited if a party is to benefit from the farming exemption".  (Order at 34:16-17.)  This misstates the standard, which is whether "modifications to the hydrological regime are necessary to *resume* operations" (33 C.F.R. § 323.4(a)(1)(ii), emphasis added), not whether the farming activities *cause* hydrological modifications.  Duarte provided evidence both that hydrological modifications were not necessary to resume the plowing, and that the plowing did not cause hydrological modifications. (Dkt. #150 at 14:19-20:1 (collecting evidence); *see also* Unruh deposition at 97:1-3 ("we had a little rain, inch or something, and that's when we got started").)

The Court should reconsider these material disputes.

## VII.    THE CASE SHOULD BE STAYED

If the order is certified for interlocutory appeal, this Court should exercise its "inherent

9

power" to stay the proceedings to "promote economy of time and effort for itself, for counsel, and for litigants".  (*CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).)  The interlocutory appeal would involve controlling questions of law about which there are substantial differences of opinion and would materially speed the termination of this litigation.  The Government has not asked for any kind of preliminary injunction, and will not be harmed by a stay.  Because a stay of proceedings would be beneficial to the Court's docket, and cause no harm, it should be granted.

### VIII.   CONCLUSION

The Court should reconsider its order, or, in the alternative, certify it for interlocutory appeal and stay these proceedings.

DATED:  June 13, 2016

BRISCOE IVESTER & BAZEL LLP

By:  */s/ Peter S. Prows*

Peter S. Prows
Attorneys for
DUARTE NURSERY, INC. and
JOHN DUARTE