UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUARTE NURSERY, INC., a California Corporation; and JOHN DUARTE, an individual,<br><br>            Plaintiffs,<br><br>    v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS,<br><br>            Defendant.<br><br>AND RELATED COUNTERCLAIM. | No. 2:13-cv-02095-KJM-DB<br><br>ORDER |

       The matter is before the court on a motion for reconsideration, or, in the alternative, for certification of interlocutory appeal and for a stay by plaintiffs and counter-defendants Duarte Nursery, Inc. and John Duarte in their case against defendant United States Army Corps of Engineer and counterclaim-plaintiff United States of America (collectively, "the United States").

       As explained below, the court denies plaintiffs' motion for reconsideration and denies plaintiffs' motion for certification of interlocutory appeal.

/////

/////

1

I.   PROCEDURAL HISTORY

On June 10, 2016, the court issued an order granting, among other things, the United States' motion for summary judgment on the United States' Clean Water Act counterclaim. Order, ECF No. 195. On June 13, 2016, plaintiffs filed the pending motion for reconsideration. Mem. P. & A., ECF No. 196. The United States has opposed, Opp'n, ECF No. 201, and plaintiffs have replied, Reply, ECF No. 204. Plaintiffs filed two notices of additional authority after filing their motion. *See Davis* Supp. Auth., ECF No. 198; *Cardenas* Supp. Auth., ECF No. 200. The United States objects but also argues the two decisions do not change this court's conclusion in the Order. Resp., ECF No. 203.

The court first discusses plaintiffs' motion for reconsideration.

II.   MOTION FOR RECONSIDERATION

A.   Legal Standard

A motion for reconsideration can be properly brought under Federal Rule of Civil Procedure 59(e) if it is filed within twenty-eight days of the entry of judgment. *Taylor v. Knapp*, 871 F.2d 803, 805 (9th Cir. 1989); *see Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898–99 (9th Cir. 2001). "A court should be loath to revisit its own decisions unless extraordinary circumstances show that its prior decision was clearly erroneous or would work a manifest injustice." *Walsh v. Am. Med. Response*, No. 13-2077, 2015 WL 1898062, at *1 (E.D. Cal. Apr. 24, 2015) (citing *Christianson v. Coit Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)). Nevertheless, in certain circumstances, a court has discretion to reconsider its prior decisions, as an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *see also Turner v. Burlington N. Santa Fe R.R.*, 338 F.3d 1058, 1063 (9th Cir. 2003). A district court should not grant a motion for reconsideration "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (citing *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). A party's mere dissatisfaction with a court's order, or belief that the

court is wrong in its decision, is not grounds for relief under Rule 59(e).  *Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981).

Furthermore, "courts avoid considering Rule 59(e) motions where the grounds for amendment are restricted to either repetitive contentions of matters which were before the court on its prior consideration or contentions which might have been raised prior to the challenged judgment."  *Costello v. United States*, 765 F. Supp. 1003, 1009 (C.D. Cal. 1991); *see also Taylor*, 871 F.2d at 805.  This approach stems from the district courts' "concerns for preserving dwindling resources and promoting judicial efficiency."  *Costello*, 765 F. Supp. at 1009 (internal citations omitted).  "Rule 59(e) motions for reconsideration are therefore not intended to give an unhappy litigant one additional chance to sway the judge."  *Walsh*, 2015 WL 1898062, at *2 (citations and quotation omitted).

B.  Discussion

Plaintiffs request that the court reconsider its June 10, 2016 decision on the cross-motions for summary judgment.  Plaintiffs argue, broadly, the court granted the United States' motions and denied plaintiffs' without addressing or at least giving only "short shrift" to plaintiffs' arguments; they say the court did not acknowledge plaintiffs' evidence creating material disputes of fact.  Notice of Mot., ECF No. 196 at 1.  Specifically, plaintiffs first argue "[t]he [c]ourt's order quotes the plowing regulation . . . [b]ut the order contains no analysis of whether that regulation applies."  Mem. P. & A., ECF No. 196-1 at 4.  Second, plaintiffs argue the court misinterpreted *L.A. Cty. Flood Control Dist. v. NRDC, Inc.*, 133 S. Ct. 710 (2012) and *S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe*, 541 U.S. 95 (2004).  *Id.* at 6.  Plaintiffs argue these two cases effectively overruled or at least limited the Ninth Circuit's decision in *Borden Ranch P'ship v. U.S. Army Corps of Eng'rs*, 261 F.3d 810 (9th Cir. 2001).  *Id.*  Third, plaintiffs argue the order does not cite *Meyer v. Holley*, 537 U.S. 280 (2003), in its discussion of corporate officers' personal liability.  *Id.* at 7.  Fourth, plaintiffs argue there remain material disputes of fact.  *Id.* at 8–9.  Lastly, with their notice of supplemental authority, plaintiffs argue that the "significant nexus" standard articulated in the concurrence in *Rapanos v. United States*, 547 U.S. 715, 782 (2006) is inapplicable.  *Davis* Supp. Auth. at 1.

3

1    As discussed below, the court considered each of plaintiffs' arguments in its prior
2 order, and none of the arguments raised by plaintiffs presents newly discovered evidence or
3 identifies an intervening change in law. *See 389 Orange St. Partners*, 179 F.3d at 665.  The
4 issue, therefore, is whether the court committed clear error. *Id.* Clear error occurs when "the
5 reviewing court on the entire [record] is left with the definite and firm conviction that a mistake
6 has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).  In order to
7 show clear error, a party moving for reconsideration based on Rule 59(e) must "set forth facts or
8 law of a strongly convincing nature to induce the court to reverse its prior decision." *Walsh*, 2015
9 WL 1898062, at *2 (citations omitted).  Clear error is "'more than just maybe or probably wrong;
10 it must be dead wrong.'" *Campion v. Old Repub. Home Prot. Co., Inc.*, No. 09-748, 2011 WL
11 1935967, at *1 (S.D. Cal. May 20, 2011) (quoting *Hopwood v. State of Texas*, 236 F.3d 256, 273
12 (5th Cir. 2000)).  Plaintiffs have not met this standard; in essence, as explained below, they
13 request the court reassess its original decision, hoping for a different outcome on a second pass
14 based on the same evidence on which they relied in summary judgment briefing. *Id.*  They have
15 not demonstrated anything approaching a "'wholesale disregard, misapplication, or failure to
16 recognize controlling precedent.'" *Id.* (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606
17 (7th Cir. 2000)).  Their motion is the type of "second bite at the apple" prohibited by Rule 59(e).
18 *Id.*  The court explains this conclusion in some detail below.

19    1.   Plowing

20    Plaintiffs contend the court committed clear error by not analyzing the application,
21 or not, of the plowing regulation, 33 C.F.R. § 323.4(a)(1)(iii)(D). Mem. P. & A. at 3–4.  As the
22 court stated in its order, however, 33 U.S.C. § 1344(f)(1) exempts certain activities from the
23 definition of "discharge of fill or dredged material." Order at 32.  These activities include
24 plowing. *Id.* Plowing is defined by 33 C.F.R. § 323.4 as

> all forms of primary tillage, including moldboard, chisel, or wide-blade plowing, discing, harrowing and similar physical means utilized on farm . . . land . . . .  The term does not include redistribution of soil, rock, sand or other surficial materials in a manner which changes any area of the waters of the United States to dry land.  For example, the redistribution of surface materials by

4

|   |   |
|---|---|
| 1 | blading, grading, or other means to fill in wetland areas is not plowing . . . . |
| 2 |   |

33 C.F.R. § 323.4(a)(1)(iii)(D).  The regulatory provision further provides that "[t]o fall under this exemption, the activities specified in [33 C.F.R. § 323.4](a)(1)(i)]," including plowing, "must be part of an established (i.e., on-going) farming . . . operation . . . ."  33 C.F.R. § 323.4(a)(1)(ii).  In other words, the "plowing regulation" referenced by plaintiffs provides an exemption from the Clean Water Act.  However, as the court previously noted, the exemption comes with regulatory constraints set forth in 33 C.F.R. § 323.4.  *See* Order at 32.

Plaintiffs argue that "if an activity causes no discharge, then it is irrelevant whether the activity is 'established.'"  Mem. P. & A. at 4.  Plaintiffs' argument correctly summarizes the last sentence of § 323.4(a)(1)(iii)(D): "Plowing as described above will never involve a discharge of dredged or fill material."  33 C.F.R. § 323.4(a)(1)(iii)(D).  However, the same section also provides that "[t]he term [plowing] does not include redistribution of soil, rock, sand or other surficial materials in a manner which changes any area of the waters of the United States to dry land."  *Id.*  The summary judgment record reflected the parties' agreement that the tillage performed on the property at issue in this case did not avoid all wetlands as delineated by one of the environmental consulting companies.  Order at 11.  The court, therefore, did not simply cease its analysis with a determination of whether plaintiffs had "plowed," and the court did not err in moving on to consider whether the tillage was part of an established farming operation.  *See* Order at 32–34.

In sum, plaintiffs' argument merely reiterates their position presented in their cross-motion for summary judgment.  Plaintiffs' disappointment with the court's decision and desire for an "additional chance to sway the [court]" do not "provide a basis for amending the judgment."  *Kilgore v. Colvin*, No. 12-1792, 2013 WL 5425313, at *1 (E.D. Cal. Sept. 27, 2013) (internal citations and quotations omitted); *see United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998) (motion for reconsideration "should not be used to ask the court to rethink what the court has already thought through—rightly or wrongly." (quotation omitted)).

/////

### 2. *L.A. Cty. Flood Control Dist.*, *Miccosukee*, and *Borden*

Next, plaintiffs assert that, contrary to the court's determination in its prior order, the case of *L.A. Cty. Flood Control Dist.* and *Miccosukee* are applicable and have effectively limited, if not overruled, *Borden*. Mem. P. & A. at 6. As already noted, plaintiffs' plain disagreement with this court's analysis, without more, is insufficient to provide a basis for reconsideration. Furthermore, nothing in plaintiffs' briefing leads the court to conclude it committed clear error. The court declines to reconsider this issue.

### 3. *Meyer*

In critiquing the absence of citation to *Meyer* in the court's prior order, plaintiffs argue the responsible corporate officer doctrine (RCOD) may apply only where Congress has made its application clear. Mem. P. & A. at 7. In its prior order, the court found, after an analysis of persuasive cases from this circuit, that the RCOD applies in civil Clean Water Act cases. *See* Order at 24–27. Plaintiffs fault the court's having not cited or addressed what they say is the "key Supreme Court case," *Meyer*, 537 U.S. at 280, on the issue of the RCOD. Mem. P. & A. at 7. Plaintiffs contend the Supreme Court in *Meyer* has found that where Congress was silent on the liability of individual officers, those officers may not be held liable for the acts of their corporation. *Id.* The court had found the *Meyer* case inapposite and therefore did not previously address it. In denying the instant motion, the court explains its reasoning below.

In *Meyer*, the Supreme Court faced the issue of whether the Fair Housing Act (FHA) imposes liability on the owners and officers of a corporation for an employee's or agent's violation of the FHA, even if the owners and officers did not direct or authorize, and were otherwise not involved in, the unlawful discriminatory act. 537 U.S. at 284. In reaching its decision, the Court expressed its concern about applying traditional vicarious liability too broadly to find an owner or officer responsible when he or she did not direct or control the offending agent. *Id.* at 286–87. This concern is not implicated by the case here, in which the Clean Water Act provides the context. The court previously did not determine John Duarte was responsible under the RCOD because of his title alone. *See* Order at 25–26. Rather, the court determined that officers may not escape individual liability in civil Clean Water Act cases simply because they

6

1 delegate tasks leading to Clean Water Act violations, if the officers have "authority over the
2 activities underlying alleged violations." *Id.* at 26.

3     Because plaintiffs have not left this court with the "definite and firm conviction
4 that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395, the court, having clarified
5 its prior position here, declines to reconsider this issue.

6     4.    <u>Material Dispute of Facts</u>

7     Plaintiffs also contend the court's decision was clearly erroneous because of the
8 existence of disputed issues of material fact. Plaintiffs have submitted no new evidence to
9 support this argument. Without new evidence, the time for a review of the evidence in the record
10 before the court on the parties' cross-motions for summary judgment has passed. *See Thomasson*
11 *v. GC Servs. Ltd. P'ship*, No. 05-940, 2007 WL 2317111, at *4 (S.D. Cal. Aug. 9, 2007). "If
12 plaintiffs believe they are entitled to a de novo review" of the cross-motion for summary
13 judgment in its entirety, "they may present their contentions to a higher court." *Id.* (emphasis
14 removed). The court declines to reconsider this issue.

15     5.    <u>"Significant Nexus" Test</u>

16     Plaintiffs argue that *United States v. Davis*, 825 F.3d 1014 (9th Cir. 2016), decided
17 after this court issued its order, worked an intervening change in the controlling law. *Davis* Supp.
18 Auth. at 1. As a result, plaintiffs say, the "significant nexus" test in the *Rapanos* concurrence is
19 not binding on this court. *Davis* Supp. Auth. at 1. The court finds this argument unpersuasive.
20 The Ninth Circuit in *Davis* faced the question of how to interpret a fractured opinion from the
21 Supreme Court. In *Davis*, the Circuit revisited the specific question whether a defendant
22 sentenced under a Federal Rule of Criminal Procedure 11(c)(1)(C) "binding" plea agreement is
23 eligible for sentence reduction in light of the fractured Supreme Court opinion in *Freeman v.*
24 *United States*, 564 U.S. 522 (2011). *See Davis*, 825 F.3d at 1016–17. The Circuit held that "[a]
25 fractured Supreme Court decision should only bind the federal courts of appeal when a majority
26 of the Justices agree upon a single underlying rationale and one opinion can reasonably be
27 described as a logical subset of the other." *Id.* at 1021–22; *see also Cardenas v. United States*,
28 826 F.3d 1164, 1171 (9th Cir. 2016) ("'[T]he narrowest opinion must represent a common

denominator of the Court's reasoning; it must embody a position implicitly approved by at least five Justices who support the judgment.'" (quoting *Davis*, 825 F.3d at 1020)).

Contrary to plaintiffs' argument, this court did not find definitively that other portions of the fractured *Rapanos* opinion could not be considered in attempting to locate a common ground. Rather, this court found that the "concurrence provides the narrowest ground on which a majority of Justices would agree if required to choose, in almost all cases." Order at 29–30 (citing *N. Cal. River Watch v. City of Healdsburg*, 496 F.3d 993, 999 (9th Cir. 2007)); *see also Cardenas*, 826 F.3d at 1171–72 n.5. This court's analysis was not inconsistent with that in *Davis*, in which the Circuit assumed but did not decide "that dissenting opinions may be considered in . . . [the] analysis" of a fractured Supreme Court opinion. *Davis*, 825 F.3d at 1025. *Davis* also is distinguishable from this case, because in *Davis* the Circuit, in analyzing the *Freeman* case, could not "derive any common denominator by combining [the] dissenting opinion with either the plurality or concurring opinion." *Id.* at 1025; *see also id.* at 1040 n.10.

In *Rapanos*, in contrast, the differing opinions of the Court overlap. To review, *Rapanos* involved two consolidated cases involving wetlands adjacent to non-navigable tributaries of traditionally navigable waters. 547 U.S. at 729–30. Although there was no majority opinion, all the Justices agreed that the statutory phrase "waters of the United States" encompasses some waters not navigable in the traditional sense. *See id.* at 731 (Scalia, J., plurality opinion); *id.* at 767–68 (Kennedy, J., concurring in the judgment); *id.* at 793 (Stevens, J., dissenting). A four-Justice plurality interpreted the Clean Water Act to cover "relatively permanent, standing, or continuously flowing bodies of water," *id.* at 739, that are connected to traditional navigable waters, *id.* at 742, as well as wetlands with a continuous surface connection to such water bodies, *id.* at 732 n.5 (the Clean Water Act does not "necessarily exclude streams, rivers, or lakes that might dry up in extraordinary circumstances, such as drought," or "seasonal rivers, which contain continuous flow during some months of the year but no flow during dry months").

Justice Kennedy, concurring only in the judgment, interpreted the term "navigable waters" to cover wetlands that "possess a significant nexus to waters that are or were navigable in

fact or that could reasonably be so made." *Id.* at 759 (quoting *Solid Waste Agency v. United States Army Corps. of Eng'rs*, 531 U.S. 159, 167 (2001)). The dissenters, on the other hand, would have upheld the determination that the wetlands at issue were waters of the United States, because any "significant nexus requirement" would be "categorically satisfied as to wetlands adjacent to navigable waters or their tributaries." *Id.* at 807–08.

The Supreme Court in *Marks v. United States*, 430 U.S. 188 (1977) held that "[w]hen a fragmented [Supreme] Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding . . . may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks*, 430 U.S. at 193 (quotation omitted). In a 2007 case, the Ninth Circuit, after parsing *Rapanos* in light of the guidance provided by *Marks*, ultimately concluded:

> Justice Kennedy, constituting the fifth vote for reversal, concurred only in the judgment. His concurrence is the narrowest ground to which a majority of the Justices would assent if forced to choose in almost all cases. *See United States v. Gerke*, 464 F.3d 723, 724 (7th Cir. 2006); *see also Rapanos*, 126 S. Ct. at 2265 n.13 (J. Stevens dissenting). Thus, as the Seventh Circuit extensively explained in *Gerke*, 464 F.3d at 724, Justice Kennedy's concurrence provides the controlling rule of law for our case. *See also Marks*, 430 U.S. at 193.

*Healdsburg*, 496 F.3d at 999–1000. Although plaintiffs argue the contrary, *Davis* did not have the effect of overruling *Healdsburg*, as explained below.

In *Healdsburg,* the Ninth Circuit cited a Seventh Circuit opinion, *United States v. Gerke Excavating, Inc.*, 464 F.3d 723, 724 (7th Cir. 2006), which laid out an extensive analysis of *Marks*. The *Gerke* court opined that Justice Kennedy's test in his *Rapanos* concurrence is narrower than the plurality's in most cases, and in instances in which that test would resolve in favor of the exercise of federal authority over wetlands, the concurring position would garner the support of five justices, namely Justice Kennedy and the four dissenters. *Id.* In cases where the test in the concurrence would resolve against the exercise of federal authority, it also would garner five votes, that of Justice Kennedy and the four Justices forming the *Rapanos* plurality. *Id.* at 725. The only exception would be in cases in which Justice Kennedy voted against the exercise of federal authority, but was then outvoted 8-to-1 by the four dissenting Justices and the

9

four members of the *Rapanos* plurality; these cases would involve the existence of a slight surface hydrological connection between a wetland and an adjacent conventional waterway. *Id.*

The Eleventh Circuit also has concluded that the concurring opinion constitutes the narrowest holding in *Rapanos*. *United States v. Robison*, 505 F.3d 1208, 1221–22 (11th Cir. 2007). Other circuits have either considered or applied the tests articulated in both the plurality and the concurrence. *See, e.g.*, *Precon Dev. Corp., Inc. v. U.S. Army Corps of Eng'rs*, 633 F.3d 278, 288–90 (4th Cir. 2011) (finding concurring "significant nexus" test governs, and thus not addressing whether *Rapanos* plurality's "continuous surface connection" test provides an alternate ground to establish Clean Water Act jurisdiction); *United States v. Cundiff*, 555 F.3d 200, 210–13 (6th Cir. 2009) (applying both the "significant nexus" and "continuous surface connection" test). At least one circuit has applied all three *Rapanos* standards, plurality, concurrence and dissent. *See United States v. Lucas*, 516 F.3d 316, 326–27 (5th Cir. 2008) (concluding that evidence presented at trial sufficient to support all three *Rapanos* standards). Finally, the First and the Eighth Circuits have held the government may establish jurisdiction under either test, "significant nexus" or "continuous surface connection." *See United States v. Bailey*, 571 F.3d 791, 799–800 (8th Cir. 2008); *United States v. Johnson*, 467 F.3d 56, 66 (1st Cir. 2006) (jurisdiction adheres if either the plurality or concurrence test met).

Finding Justice Kennedy's test in his *Rapanos* concurrence to be the narrowest test, as determined by the Ninth Circuit in *Healdsburg*, the court declines plaintiffs' motion to reconsider this issue.

Plaintiffs' motion for reconsideration of this court's order granting the United States' motion for summary judgment on its counterclaim is DENIED.

/////
/////
/////
/////
/////
/////

III. CERTIFICATION OF INTERLOCUTORY APPEAL

The court next considers whether to certify an interlocutory order for appeal.[1]

A. Legal Standard

Under 28 U.S.C. § 1292(b), the court has discretion to certify an interlocutory order for appeal when (1) the order involves a controlling question of law; (2) there is substantial ground for differences of opinion as to that question; and (3) an immediate appeal may materially advance the ultimate resolution of the litigation. 28 U.S.C. § 1292(b); *see also In re Cal. Title Ins. Antitrust Litig*, No. 08-1341, 2010 WL 785798, at *1 (N.D. Cal. Mar. 3, 2010). Certification of an interlocutory appeal should be granted only in exceptional situations, where allowing an interlocutory appeal will avoid protracted and expensive litigation. *See, e.g.*, *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978); *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982). The party seeking certification of an interlocutory order has the burden to show that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand*, 437 U.S. at 475; *see also James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002).

1. Controlling Questions of Law

In order for a proposed interlocutory appeal to raise a controlling question of law, the moving party, in this case plaintiffs, must show "that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement*, 673 F.2d at 1026 (citing *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)). The Ninth Circuit has not expressly defined the term "question of law." However, this court previously has found, consistent with Ninth Circuit authority, that "[w]here the issue decided by the court is fact-dependent, it is generally not a controlling question of law." *Winding v. Allstate Ins. Co.*, No. 09-3526, 2012 WL 1565674, at *2 (E.D. Cal. May 2, 2012) (citations and quotations omitted); *cf. Miller v. Thane Int'l, Inc.*, 615 F.3d 1095, 1104 (9th Cir. 2010) (an inquiry is not a question of

---

[1] The court notes the Ninth Circuit relatively recently has denied plaintiffs' interlocutory appeal for lack of jurisdiction, which has mooted a separate request for stay. This order reaches the pending request for certification on the merits.

law when "it involves 'the application of a legal standard to a particular set of facts.'" (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976))).

### 2. Substantial Ground for a Difference of Opinion

As to the second requirement under section 1292(b), a court must determine the extent to which the controlling law is unclear in order to decide if a "substantial ground for difference of opinion" exists under section 1292(b). As articulated by the Ninth Circuit, courts traditionally have found that

> a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented. However, just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal.

*Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (citations and quotations omitted).

### 3. Materially Advance Resolution of the Litigation

Third, a proposed interlocutory appeal is appropriate where resolution of the issue would materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Resolution of a question materially advances the termination of litigation if it "facilitates disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later in order to save the courts and the litigants unnecessary trouble and expense." *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 966 F. Supp. 2d 1031, 1045–46 (C.D. Cal. 2013) (quotation and brackets omitted); *see also United Air Lines, Inc. v. Wiener*, 286 F.2d 302, 306 (9th Cir. 1961) (interlocutory appeal granted as to whether to grant plaintiff's request to have same jury decide issues of liability and damages); *Lear Siegler, Inc. v. Adkins*, 330 F.2d 595, 598 (9th Cir. 1964) (finding § 1292(b)'s requirements met where party sought appeal of district court's stay order, which while in effect would have halted proceedings entirely, and reversal of which would have compelled proceeding with the action).

/////

/////

B.  Discussion

Plaintiffs argue the court should certify three issues for interlocutory appeal: (1) plowing, (2) the effect of *L.A. Cty. Flood Control Dist.* and *Miccosukee* on *Borden*, (3) the application of *Meyer* on the responsible corporate officer doctrine, and (4) the "significant nexus" test. *See generally* Mem. P. & A. The court addresses each issue in turn below, applying the § 1292(b) factors.

1.  Plowing

Plaintiffs argue the court should certify the applicability of the plowing regulation to this case. First, the court finds there is a controlling question of law with respect to whether the plowing regulation is applicable here, "after nearly twenty-four years of no activity that meets the applicable definition of farming." Order at 34. However, plaintiffs have not shown there is a substantial difference of opinion among the circuits when considering analogous cases. Plaintiffs carry the burden on each prong, and it is insufficient for plaintiffs to state only summarily, without citation to authority, that the Government "[f]or more than 40 years" had maintained that plowing, as defined in the regulation, causes no discharge. Mem. P. & A. at 5. Even if the Ninth Circuit has yet to address this issue, "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Couch*, 611 F.3d at 633 (quotation omitted). The court finds it unnecessary to reach the third prong because plaintiffs have not carried their burden on the second prong of section 1292(b).

Plaintiffs' motion to certify this issue for interlocutory appeal is DENIED.

2.  *L.A. Cty. Flood Control Dist.*, *Miccosukee*, and *Borden*

Plaintiffs are correct that whether returning plowed soil to the body of water from which the soil originated constitutes a discharge is central to the question of liability, because the answer is determinative of whether they discharged pollutants into the waters of the United States. The issue, as the court previously discussed, was addressed by *Borden*. *See* Order at

/////

1   28-29.  As noted above, plaintiffs now argue *Borden* has been limited, if not overruled, by two
2   Supreme Court cases, *L.A. Cty. Flood Control Dist.* and *Miccosukee*.  Mem. P. & A. at 6–7.

3   At first glance, plaintiffs have identified a controlling question of law.  Plaintiffs
4   argue summarily that no appellate court has addressed the effect of *L.A. Cty. Flood Control Dist.*
5   and *Miccosukee* on *Borden*, and thus the issue should be certified for interlocutory appeal.  *Id.*
6   at 7.  However, an issue is not immediately certifiable for interlocutory appeal simply because it
7   presents a situation where the effect of Supreme Court cases on circuit precedent has not been
8   addressed.  *See In re Cement Antitrust Litig.*, 673 F.2d at 1026 (only a showing of "exceptional
9   circumstances" will justify an interlocutory appeal).  Here, as noted, the Supreme Court
10  precedents cannot be fully squared with the facts of *Borden* and the facts here.  In *Borden*, the
11  Ninth Circuit faced an issue of deep ripping raised by disgorged soil filling protected wetlands.
12  261 F.3d at 812.  The Ninth Circuit held that churning up soil and putting it back where it came
13  from can constitute discharge of a pollutant under 33 U.S.C. §§ 1311(a), 1362(12).  *Id.* at 814–15
14  (citing *Rybachek v. United States Envtl. Prot. Agency*, 904 F.2d 1276 (9th Cir. 1990)).  The Ninth
15  Circuit also considered whether the plaintiffs in *Borden* would fall under the "recapture
16  provision," which provides that even normal plowing can be regulated if it brings land "into a use
17  to which it was not previously subject . . . ."  *Id.* at 815 (quoting 33 U.S.C. § 1344(f)(2)).  The
18  Circuit ultimately found the deep ripping was governed by the recapture provision, precluding it
19  from qualifying for a farming exemption.  *Id.*

20  The facts in this case are more akin to those of *Borden*, where the focus was on the
21  addition of soil to wetlands, *see id.*, rather than that in *L.A. County*, whether "the flow of water
22  out of a concrete channel within a river rank[s] as a 'discharge of a pollutant'" under the Clean
23  Water Act, *L.A. Cty. Flood Control Dist.*, 133 S. Ct. at 711.  This case similarly is distinguishable
24  from *Miccosukee,* which addressed whether an National Pollutant Discharge Elimination System
25  (NPDES) permit was required under the Clean Water Act for point sources that do not generate
26  pollutants and whether a canal and wetlands area are meaningfully distinct water bodies.
27  *Miccosukee*, 541 U.S. at 104–07.  *See also ONRC Action v. U.S. Bureau of Reclamation*, 798 F.3d
28  933, 937–39 (9th Cir. 2015) (noting both *L.A. Cty. Flood Control Dist.* and *Miccosukee* address

question whether U.S. Bureau of Reclamation violated Clean Water Act by discharging water containing pollutants from man-made channel into a river subject to a NPDES permit).

When a party seeks "to urge the [c]ourt once again to apply a body of case law which the court has already determined is manifestly inapposite to the circumstances presented here," the underlying motion presents no controlling questions of law that warrant the certification of an interlocutory appeal. *Oak Forest Prods., Inc. v. Hiscock & Barclay, LLP*, 114 F. Supp. 3d 76, 81 (W.D. N.Y. 2015). Because plaintiffs have not carried their burden on the first prong under section 1292(b), the court need not reach the other two prongs. The court DENIES plaintiffs' motion to certify this issue for interlocutory appeal.

3. *Meyer*

The court above has found *Meyer* to be inapposite, precluding the need to repeat that analysis here. The court DENIES plaintiffs' motion to certify this issue for interlocutory appeal as well.

4. "Significant Nexus" Test

Lastly, the court returns to the issue of whether the concurring "significant nexus" test in *Rapanos* remains applicable, this time to consider plaintiffs' motion for certification of interlocutory appeal of the issue. Under section 1292(b), plaintiffs must demonstrate the existence of a substantial ground for a difference of opinion, which requires the court to examine to what extent the controlling law is unclear. *Couch*, 611 F.3d at 633. As stated above, a substantial ground for difference of opinion exists where "the court of appeals of the circuit has not spoken on the point." *Id.* (quotation omitted).

In *Healdsburg*, *supra*, the Ninth Circuit in examining *Rapanos*, explicitly adopted Justice Kennedy's "significant nexus" test. As discussed above, *Davis* did not overrule *Healdsburg*, either explicitly or implicitly. *Davis* concerned itself with whether the Ninth Circuit should adopt a reasoning versus a results based approach to analyze fragmented Supreme Court decisions. *Davis*, 825 F.3d at 1020–21. The Ninth Circuit ultimately held it would follow the reasoning based approach to "determine whether one of those opinions sets forth a rationale that is the logical subset of other, broader opinions." *Id.* at 1028. The Circuit in *Healdsburg* did not

15

expressly state whether it was following a results or reasoning based approach when it found Justice Kennedy's "concurrence is the narrowest ground to which a majority of the Justices would assent if forced to choose in almost all cases." *Healdsburg*, 496 F.3d at 999.  Plaintiffs, in moving for certification of an interlocutory appeal, are essentially asking this court to read the tea leaves and speculate whether the Ninth Circuit would interpret *Rapanos* differently now in light of *Davis*.  Cf. *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (observing that intervening authority overturns prior binding precedent only when cases are "clearly irreconcilable"); *United States v. Lindsey*, 634 F.3d 541, 548 (9th Cir. 2011) (same).  The court declines to do so.

Plaintiffs' motion for certification of an interlocutory appeal on this question too is DENIED.

IV.     CONCLUSION

Plaintiffs' motions for reconsideration and for certification of interlocutory appeal are DENIED.

IT IS SO ORDERED.

DATED:  March 23, 2017.

_____
UNITED STATES DISTRICT JUDGE