1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DUARTE NURSERY, INC., et al.,              No.  2:13-cv-02095-KJM-DB

12                   Plaintiffs,

13          v.                                   ORDER

14   UNITED STATES ARMY CORPS OF
     ENGINEERS, et al.,
15
                     Defendants.
16

17

18                  On June 10, 2016, this court found Duarte violated the Clean Water Act (CWA) by

19   discharging pollutants into "waters of the United States" without a permit or statutory exemption.

20   Order at 24–35, ECF No. 195.  After finding the CWA to be a strict liability statute, the court

21   scheduled a bench trial to determine the issue of injunctive relief and civil penalties.  ECF No.

22   268; *see also* 33 U.S.C. § 1319(b) (providing for injunctive relief); 33 U.S.C. § 1319(d)

23   (providing for civil penalties).

24                  On June 16, 2017, the court held a final pretrial conference and heard the parties'

25   arguments on several pending motions *in limine* (MILs).  *See* ECF No. 286.  The court

26   adjudicated several motions from the bench, ECF No. 286, and now addresses the balance.

27   /////

28   /////

                                                   1

I.    SUMMARY OF REMAINING *MOTIONS IN LIMINE*

The court briefly summarizes the remaining MILs, all of which the United States filed. Two motions seek (1) to admit several business records without the need for a live witness, ECF No. 231-1 (MIL No. 2); and (2) to preclude Duarte from raising certain affirmative defenses, ECF No. 235-1 (MIL No. 3).  Additional motions seek to exclude several documents produced after the close of discovery: (3) various exhibits comprising declaration and deposition testimony the government filed in prior trials of separate cases, ECF No. 230-1 (MIL No. 4); (5) supplemental reports of Duarte's experts Thomas Skordal, Diane Moore and David Kelley, ECF No. 228-1 (MIL No. 1); (6) "second supplemental" expert reports of Skordal and Moore and pictures attached to those reports, ECF No. 280 (second addendum to MIL No. 1); and (7) Duarte's financial records, ECF Nos. 230-1 (MIL No. 4), 238 (first addendum to MIL No. 4), and 281 (second addendum to MIL No. 4).  In total, the United States requests the court exclude thirty-six of Duarte's exhibits.

II.   BUSINESS RECORDS WITHOUT LIVE TESTIMONY (MIL NO. 2)

The United States seeks to admit twelve business records from North State Resources, Inc. (North State) and NorthStar Environmental (NorthStar) filed with Len Lindstrand's and James Stevens's declarations, without qualifying the proponents of the records as experts and making them available for cross-examination.  ECF No. 231-1 at 2, 10 (United States trial exhibits 8, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20 and 50).  The records include, in part, draft delineations of waters of the United States (exhibits 18, 19, 20), and NorthStar's "scope of work" contracts with Duarte (exhibits 13 and 14).  No party disputes these documents were made and kept in the regular course of business.  *See* ECF 231-1 at 2 ("The parties agree that these documents are authentic."); *see also* ECF No. 241 (omitting any rebuttal on this point).  But Duarte contends the United States cannot use the expert opinions contained within these documents without making a qualified expert  witness available for cross-examination.  ECF No. 241 at 6.  Alternatively, Duarte contends the documents are too unreliable to qualify for the business records exception because they were "never verified" and are based on dated laws and standards, and "even the Government's experts in this case dispute [their veracity]."  *Id.* at 8.

Under Rule 902(11), a party may authenticate a "domestic" or business record through certification in lieu of live witness testimony. Doing so requires satisfying Rule 803(6)(A)–(C), regarding records of a regularly conducted activity. Rule 803 requires that (A) the record was "made at or near the time" of the conduct it describes or that the information contained within the record was transmitted by "someone with knowledge"; (B) the record was "kept in the course of a regularly conducted activity" of the organization; and (C) "making the record was a regular practice of that activity." Fed. R. Evid. 803(6)(A)–(C). Rule 902(ii) also requires giving the adverse party "reasonable written notice of the intent to offer the record" before hearing or trial, "making the record and certification available for inspection," and providing the adverse party a "fair opportunity to challenge" the document's admissibility. Fed. R. Evid. 902 (11).

Duarte's first contention, that the records contain inadmissible expert opinions unless supported by a sponsoring witness, is unpersuasive. Business records can include, among other things, "condition[s], opinion[s], or diagnos[e]s." Fed. R. Evid. 803(6). Indeed, "portions of investigatory reports otherwise admissible under [the public records exception] are not inadmissible merely because they state a conclusion or opinion." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988); *United States v. Licavoli*, 604 F.2d 613, 622–23 (9th Cir. 1979) ("We see no reason to adopt an inflexible rule that every case requires the proponent of a business record containing expert opinion . . . ."). "Rule 803(6) expressly provides for the exclusion of a business record if the source of information indicates a lack of trustworthiness," *Licavoli*, 604 F.2d at 622, so "[a]s long as the [opinion in the business record] is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible . . . ." *Beech Aircraft*, 488 U.S. at 170.

Here, Duarte concedes the exhibits are business records prepared as a matter of "routine," "incident to and contemporaneous with" jurisdictional delineations made with respect to Duarte's property. *See* Linstrand Decl., ECF No. 231-3; Stevens Decl., ECF No. 231-4. As such, the opinions within these records are "based on a factual investigation and satisf[y] the Rule's trustworthiness requirement." *Beech Aircraft*, 488 U.S. at 170. That such documents

contain opinions informed by some expertise does not preclude their admission. *Licavoli*, 604 F.2d at 622 (finding trial judge did not abuse discretion in admitting business record containing expert opinions without requiring live testimony). And to the extent Duarte challenges the trustworthiness of the opinions in the exhibits, his challenge goes to the documents' weight, not their admissibility. *United States v. Catabran*, 836 F.2d 453, 458 (9th Cir. 1988) (admitting business records over objection that they were "inaccurate and therefore untrustworthy.").

United States exhibits 8, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20 and 50 are admissible without a live witness. United States MIL No. 2 is GRANTED.

III.    MOTION TO EXCLUDE AFFIRMATIVE DEFENSES (MIL NO. 3)

At hearing, Duarte asserted it intends to rely on two affirmative defenses at trial: estoppel and unclean hands. The United States argues Duarte waived both defenses by omitting them from his summary judgment opposition. ECF No. 235-1 at 6.

The Ninth Circuit has not determined if an affirmative defense that is timely asserted in an answer, but then omitted in a summary judgment opposition where liability is determined, may then be presented at trial. The court finds here that allowing these two defenses to lay dormant and then resurface at trial, after liability has been determined, would undermine judicial economy, efficiency, and fairness to the opposing party.

The court recognizes, however, that case law on this point is not as clear-cut as the United States would have it. Duarte correctly contends a non-controlling case, upon which the United States relies, *United Mine Workers of Am. 1974 Pension v. Pittston Co.*, 984 F.2d 469, 479 (D.C. Cir. 1993), does not state that an affirmative defense must be raised in response to a summary judgment motion or it is waived at trial. ECF No. 231-1 at 7. The defendant in *Pittston*, as a sister court has observed, "waived its defenses from the beginning, having never asserted them in any pleading or motion in the district court." *Daingerfield Island Protective Soc. v. Babbitt*, 40 F.3d 442, 445 (D.C. Cir. 1994). *Pittston*'s thus assessed whether affirmative defenses that were waived all along could be raised on appeal for the first time to challenge the trial court's finding of liability on summary judgment. *Id.* at 479. *Pittston* did not consider whether an affirmative defense that is properly raised in an answer, but then omitted at summary

4

judgment where liability is decided, can be considered in a trial. *See Pittston Co*, 40 F.3d at 442. Indeed, the D.C. Circuit later distinguished *Pittston* on a similar basis. *Long v. Howard Univ.*, 550 F.3d 21, 24–25 (D.C. Cir. 2008) ("[T]here is no requirement that a party assert a statute-of-limitations defense in opposition to a summary-judgment motion in order to assert it at trial. On the contrary, the defense can be raised at trial so long as it was properly asserted in the answer and not thereafter affirmatively waived."). Thus, *Pittston* and its prodigy are unpersuasive here. *See, e.g.*, *In re Commercial Acceptance Corp.*, 5 F.3d 535 (9th Cir. 1993) (Boochever, J. concurring) (citing *Pittston* to explain "[t]he failure to raise an affirmative defense in opposition to a motion for summary judgment constitutes an abandonment of the defense."); *Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1353 (Fed. Cir. 1999) (same); *Williams v. Univ. Med. Ctr. of S. Nev.*, No. 2:09-CV-00554-PMP, 2010 WL 3001707, at *2 (D. Nev. July 28, 2010) (same).

The district court's reasoning in *Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 796 F. Supp. 1164, 1167 (S.D. Ind. 1992), is more persuasive. The court in *Pantry* addressed a scenario analogous to that before this court. There the court deemed any unasserted affirmative defenses waived, once omitted from a summary judgment on liability, "the non-movant is thereby placed on notice that *all* arguments and evidence opposing a finding of liability must be presented to properly resolve that issue." *Id.* (original emphasis). To hold otherwise would keep the court and parties in "limbo" and allow unargued affirmative defenses to lie dormant, waiting to unravel the court's prior dispositive liability decisions. *Id.* at 1168.

Here, Duarte did not raise either estoppel or unclean hands as a possible defense in opposition to summary judgment. The court determined liability in its summary judgment. Now, after having received an unfavorable result, and after the court has already denied Duarte's motion to reconsider the summary judgment order, Duarte tries again to circumvent that liability ruling by asserting these affirmative defenses at trial. He should have raised them in response to the motion for summary judgment, but he did not. Duarte therefore waived them.

The United States' motion to preclude Duarte's reliance on the affirmative defenses of estoppel and unclean hands at trial is GRANTED. With the balance of the United

1  States' MIL No. 3 previously granted, *see* ECF No. 286, the United States' MIL No. 3 is

2  GRANTED IN FULL.

3  IV.    <u>MOTION TO EXCLUDE GOVERNMENTAL RECORDS (MIL NO. 4)</u>

4          The United States seeks to exclude four exhibits, BO, CJ, CK and EB, which

5  include declaration and deposition testimony the United States' experts gave in cases involving

6  different parties and facts, in some instances more than 10 years ago.  ECF No. 230-1 at 5.  The

7  United States asserts these exhibits are hearsay, irrelevant and would waste the court's time to

8  review.  *Id*.  Duarte contends, because the past testimony was provided by the same experts the

9  government retained for this case, the testimony is relevant.  ECF No. 243 at 4.

10         Federal Rules of Evidence 401 and 402 provide that only relevant evidence is

11  admissible and that evidence is relevant only where "(a) it has any tendency to make a fact more

12  or less probable than it would be without the evidence; and (b) the fact is of consequence in

13  determining the action."  Fed. R. Evid. 401, 402.  Rule 403 also excludes evidence where the

14  minimal probative value is outweighed by prejudice, such as adding confusion or undue delay.  Fed.

15  R. Evid. 403.

16         In this case, all that is left to decide is whether to award civil penalties under 33

17  U.S.C. § 1319(d) and injunctive relief under § 1319(b).  *See* ECF No. 195.  Having carefully

18  reviewed the four exhibits, the court finds they are irrelevant to these remaining issues.  The

19  remedy phase should focus only on the remedies that are appropriate to offset the loss of functioning

20  of waters of the United States and a civil penalty to deter Duarte and others from committing future

21  violations.  Duarte has not explained how deposition testimony that Hernandez and Arredondo gave

22  in factually distinguishable cases years ago is relevant to assessing the civil penalties and injunctive

23  relief here.  Any  tangential benefit of the testimony is far outweighed by the likelihood that the

24  testimony will simply waste the court's time.   The court therefore excludes exhibits BO, CJ, CK and

25  EB from the record, under Rule 403.  That said, it may be the deposition testimony may be used for

26  impeachment, should the situation arise.

27

28

6

V.    MOTION TO EXCLUDE DUARTE'S EXPERT REPORTS (MIL NOS. 1 AND 4)

The United States seeks to exclude reports identified as "supplemental" from Duarte's expert witnesses Thomas Skordal, Diane Moore and David Kelley; these are identified as Duarte's "trial exhibits E, J and M."[1] ECF No. 228-1 at 2.  The United States contends these reports, to the extent they are relevant to the remedies phase of the bench trial, are untimely, are unfairly prejudicial and are not actually supplemental.  ECF No. 236 at 2–3.  The United States also seeks to exclude Diane Moore's and Thomas Skordal's "second supplemental" reports and three new photographs associated with these reports, identified as Duarte trial exhibits KV, KW, LQ, LR and LS, respectively.  ECF No. 280 at 2, 6; ECF No. 281 at 5.

Duarte contends the first three reports identified as "supplemental" were timely disclosed on or before the August 5, 2016 pretrial disclosure deadline; if they were not, the error was substantially justified and harmless.  ECF No. 240 at 7, 20.  Regarding the "second supplemental" reports of Skordal and Moore and the associated photographs, Duarte contends these documents are "within the scope of the initial reports" filed before the discovery deadline and are thus timely.  ECF No. 283 at 10–11.  Alternatively, Duarte contends their admission also is substantially justified and harmless.  *Id.*

A.    Background

On May 14, 2015, this court ordered all discovery be completed by October 2, 2015.  Am. Scheduling Order at 2, ECF No. 73.  The court also set deadlines for expert reports.  *Id.* at 4.  Except economic benefit and impact reports, initial reports were due June 5, 2015, with rebuttal reports due July 23, 2015, "all discovery" was to be completed by October 2, 2015.  *Id.* at 2.

In June 2015, the parties disclosed initial expert reports.  ECF No. 240 at 11; *see* ECF Nos. 132-1 (Moore Initial Report), 150-5 (Skordal Initial Report), 150-8 (Kelley Initial

---

[1] David Kelley is no relation to Matthew Kelley, the Army Corps employee who discovered Duarte's tillage activities.  *See* ECF No. 240 at 7 n.4.

Report).  In July 2015, Duarte disclosed rebuttal reports.  *See* ECF Nos. 132-2 (Moore Rebuttal Report), 150-6 (Skordal Rebuttal Report), 150-9 (Kelley Rebuttal Report).

On June 21, 2016, well after the court imposed discovery cutoff date, Duarte disclosed Skordal's supplemental report.  *See* ECF No. 244-8 (Skordal Supplemental Report); *see also* ECF No. 280 at 2 (detailing this timeline).  On August 5, 2016, Duarte disclosed Moore's and Kelley's supplemental reports.  ECF No. 280 at 2; *see also* ECF Nos. 244-3 (Moore Suppl. Report), 244-7 (Kelley Suppl. Report).

On March 30, 2017, the court ordered that "the parties may file an updated joint pretrial statement no later than 5/26/2017."  Minute Order, ECF No. 268.[2]  Just three days before this deadline, Duarte emailed the United States a copy of Skordal's second supplemental report.  ECF No. 280 at 3.  Duarte then emailed the United States a copy of Moore's second supplemental report on Friday, May 26, 2017, after the parties had already filed their Amended Joint Pretrial Statement.  *Id.*  The first time Duarte told the United States these two supplemental reports existed was in an email sent on May 21, 2017.  *See id.* at 3.  The United States does not specify when, if at all, Duarte emailed the associated photographs.  *See generally id.*

### 1.    Reports of Skordal and Moore

Skordal's initial and rebuttal reports extensively discuss wetland hydrology, the various phases of wetland vegetation, and the relative effects of tillage versus drought on wetland vegetation.  Skordal Initial Report at 7–11; Skordal Rebuttal Report at 5.  Skordal hypothesized but had not established that a wetter year would positively affect wetland vegetation.  Skordal Initial Report at 7–11; Skordal Rebuttal Report at 5.  Similarly, Moore's initial report explained that, at the time, California's extended drought may have masked wetland indicators; Moore hypothesized without showing these wetland indicators could return during a wetter season.

---

[2] The court gave the parties this additional opportunity to update their final pretrial statement given the time lapse occasioned by Duarte's appeal, reconsideration motion and motion to stay.  *See* ECF No. 268.  That opportunity for supplementation, however, does not alter the pretrial disclosure date of August 5, 2016, that the court and parties use here to assess timeliness of the expert reports.  *See* Minute Order, ECF No. 222 (setting relevant pretrial disclosure dates).

Moore Report at 6–9.  In her rebuttal report, Moore observed that the vegetation in tilled wetlands was similar to the vegetation in untilled wetlands on Duarte's property.  Moore Rebuttal at 5.

After the close of discovery, in April 2016, Moore and Skordal further investigated the Duarte property and used their new findings to support the supplemental reports challenged by the United States' MIL.  ECF No. 240 at 16; Prows Decl. Ex. 3 at 5, ECF No. 244-3.  The new investigation followed a "normal" rainfall season, which occurred after several years of drought.  Prows Decl. Ex. 8 at 3, ECF No. 244-8.  The supplemental reports discuss Skordal's and Moore's newly discovered evidence, which they say proves their hypothesis that normal rainfall positively affects wetland vegetation on Duarte's property.  Skordal Suppl. Report at 3; Moore Suppl. Report at 14.

A year later, in May 2017, Skordal and Moore filed second supplemental reports based on a new study of plants conducted the same month.  *See* Spence Decl. ¶¶ 13, 16 (listing receipt dates for second supplemental reports), ECF No. 280-1.  Moore and Skordal say they conducted additional studies because the rainfall in the winter of 2016 and spring of 2017 was heavier than normal and thus allowed them to further test their opinions.  *See* ECF No. 280-1 at 1-3 (Skordal Second Suppl. Report attached as Ex. A to Spence Decl.); ECF No. 280-1 at 9-26 (Moore Second Suppl. Report attached as Ex. B to Spence Decl.).

2.    Kelley's Reports

Kelley's initial and rebuttal reports critique the "reference" sites, located northwest of the Duarte property, used by the government's experts to assess the supposed impacts caused by Duarte's tillage.  Kelley Initial Report at 10; Kelley Rebuttal Report at 11–12.  Specifically, Kelley opines the government's "reference" sites are fundamentally flawed, in part because they are not on the same landform as the Duarte property.  Kelley Rebuttal Report at 11–12.  "A reference site is a stream or wetland with relatively few human impacts that serves as a model for a particular ecoregion."  17 P. Ann Pickett, *Natural Resources & Environment* 42 (American Bar Association 2002).  A land form is "a specific geomorphic feature on the surface of the earth, ranging from large-scale features such as plains, plateaus, and mountains to minor features such

as hills, valleys, and alluvial fans." *Dictionary.com Unabridged*, Random House, Inc. (Aug. 9, 2017), http://www.dictionary.com/browse/landform.

Kelley's supplemental report addresses new information he says he received about the unusual soil profiles near the government's chosen reference sites. *See* Kelley Suppl. Report at 4. As Duarte explains, this "new information" includes photographs a government soil scientist sent Kelley in April 2016, showing "soil pits" he had dug up a week earlier quite near the off-site reference sites the government's experts' in this case had used. ECF No. 280 at 9. Soon afterwards, Duarte asked the government to supplement its previous responses to Duarte's document requests with any new information related to this area encapsulating the reference sites, as it might be relevant to "supplemental expert disclosures … under Rule 26(e)(2)." *Id.* at 9–10. The government responded on August 1, 2016, with documents related not only to the April 2016 soil pits, but also to visits in January, February and July 2016. *Id.* at 10; *see also* Kelley Suppl. Report at 4 (explaining that "[s]ince writing the earlier reports," he received new information and photos regarding the soils and landforms on the reference sites the federal team used "for their hydrogeomorphic assessment of the status and conditions of wetlands on the Duarte property[.]"). This information reaffirmed Kelley's conclusion in the initial and rebuttal reports; he concludes "[t]hat the nature of the restrictive layers in the landscape positions near the reference sites are different from those on the Duarte property [and] supports [his] prior observations that the reference sites chosen by the federal team are different from the Duarte site and inappropriate for use as reference sites for hydrogeomorphic assessment of the Duarte site." *Id.*

B.    Legal Standards - Expert Disclosure Requirements and Supplemental Reports

Under Rule 26(a)(2), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence. Fed. R. Civ. P. 26(a)(2). Experts who are "retained or specially employed to provide expert testimony in the case," must prepare and sign a written report. Fed. R. Civ. P. 26(a)(2)(B). Under Rule 26(e), a party must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information

has not otherwise been made known to the other parties during the discovery process or in writing.  Fed. R. Civ. P. 26(e)(1)(A).

For expert witnesses, the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition.  Fed. R. Civ. P. 26(e)(2).  Any additions or changes to this information must be disclosed by the time the party's Rule 26(a)(3) pretrial witness disclosures are due.  *Id.*; *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, No. 13–1946, 2015 WL 1119406, at *6 (S.D. Cal. Mar. 11, 2015).  The relevant pretrial disclosures date in this case was August 5, 2016.  Min. Order, ECF No. 222.

Supplementing an expert report under Rule 26 means "correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure."  *Gerawan Farming, Inc. v. Rehrig Pacific Co.*, 2013 WL 1982797, at *5 (E.D. Cal. May 13, 2013) (citing *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998)).  "Although [Rule] 26(e) requires a party to 'supplement or correct' a disclosure upon information later acquired, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report. . . ."  *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 639 (D. Haw. 2008) (quoting *Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003) (internal citation omitted)).  "For example, courts have rejected supplemental expert reports that: 1) were significantly different from the expert's original report and effectively altered the expert's theories; 2) or attempted to deepen and strengthen the experts' prior reports."  *Id* (citation and internal quotation marks omitted).  Moreover, supplementation "does not cover failures of omission because the expert did an inadequate or incomplete preparation . . . . To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation."  *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) (internal citations omitted).

C.     Discussion and Conclusion

       1.     Supplementation

The "supplemental" and "second supplemental" reports of Moore and Skordal are not actually supplemental. These relatively recent reports present new information to affirm a hypothesis which, at the time the rebuttal report was disclosed, could not be proven or disproven, namely the effect of normal or greater rainfall on wetland vegetation. Accordingly, the reports present entirely new information, constitute an attempt to "deepen and strengthen the experts' prior reports," and "bolster or submit additional expert opinions." *See id*. Their reports, if accepted, could significantly alter the calculation of civil penalties because the effects of Duarte's CWA violation could drastically differ from those indicated in documents filed before the discovery cutoff. *See Gerawan Farming*, 2013 WL 1982797, at *5 (declining to designate report as "supplemental" where expert's new opinion would result in a "significantly different calculation of damages"). Accordingly, the reports are properly characterized as new rather than supplemental. As such, they should have been filed before the October 2, 2015 discovery cutoff date. ECF No. 73 at 2. Thus, they are untimely and will be excluded unless the untimely disclosure was substantially justified or harmless under Rule 37, as discussed below.

Kelley's report, however, qualifies as supplemental. In his timely rebuttal report, Kelley opined the government's reference sites were "very different from the Duarte parcel." Kelley Rebuttal at 12. The supplemental report reiterates that same opinion and notes the information that was not available to Kelley at the time rebuttal reports were due. Since the rebuttal report was disclosed before the August 5, 2016 final pretrial disclosures due date, and the court has no information that indicates Kelley obtained this new information nefariously or earlier than his report indicates, his supplemental report is timely. *See* Fed. R. Civ. P. 26(e)(2) ("Any additions or changes [expert reports] must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.").

2. <u>Skordal and Moore: Failure to Timely Disclose is Not Substantially Justified or Harmless</u>

Because Skordal and Moore's supplemental reports and accompanying pictures are untimely, Duarte may not use them at trial unless the failure to timely disclose was substantially justified or harmless. Fed. R. Civ. P. 37. In determining whether a belated disclosure was "substantially justified," courts should consider "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (unpublished) (citation omitted). In determining if a belated disclosure was harmlessness, courts consider whether there will be a need to reopen discovery or change the trial date, whether there is unfair surprise, or whether the opposing party will be subject to unnecessary expenditure. *See, e.g., Hoffman v. Constr. Protective Servs.*, 541 F.3d 1175, 1180 (9th Cir. 2008) ("Later disclosure of damages would have most likely required the court to create a new briefing schedule and perhaps re-open discovery, rather than simply set a trial date. Such modifications . . . support[] a finding that the failure to disclose was not harmless."). The burden is on the party facing exclusion to prove the delay was justified or harmless. *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

Here, the belated disclosure of the supplemental and second supplemental reports was not substantially justified. First, the information undergirding the supplemental reports was gathered well after the October 2015 discovery cutoff set by the court. ECF No. 73. Duarte cites no authority indicating a change of property conditions justifies further discovery without a stipulation or court order. Because Duarte could not control the effect of normal rainfall on wetland vegetation, when such conditions did occur, "contacting opposing counsel and seeking a stipulation extending the discovery cut-off dates was an avenue available." *UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.*, No. CIV S-04-2611-FCD-DAD, 2006 WL 2034689, at *3 (E.D. Cal. July 18, 2006), *report and recommendation adopted,* No. CIV S-04-2611-FCD-DAD,

2006 WL 2433796 (E.D. Cal. Aug. 21, 2006).  Duarte provides no reason for not pursuing that avenue.

The belated disclosures also would significantly prejudice the United States if the reports are admitted.  At hearing, Duarte contended it could cure the prejudice by allowing the United States to now conduct follow-up investigations on Duarte's property.  But to accurately assess the "actual condition of the wetlands on the Duarte property," the additional discovery would have had to be carried out in April 2016, the same period covered by the supplemental reports.  ECF No. 240 at 16.  Indeed, Duarte contends that more-than-normal rainfall during the winter of 2016 to 2017 justified the additional studies in May 2017, because the "court should not be willfully kept in the dark about the current condition of the wetlands on the property."  ECF No. 283 at 11; Skordal Second Suppl. Report at 7, Moore Second Suppl. Report at 12.  The court has no desire to be kept in the dark but what plays out in the daylight of a public courtroom must take place on a level playing field.  There is no way now for the United States' experts to gather information in the same time frame, and present any informed competing conclusions.

The parties are in the final stages of trial preparation with trial on remedies set to begin August 15.  The clock has run on any time to cure.  Duarte's failure to disclose was not substantially justified.

For the same reasons, Duarte's delay in disclosing was not harmless.  The only possible imperfect way to offset the prejudice the United States would endure, should the supplemental reports come in, would be for this court to delay the proceedings until equivalent "optimal conditions" arise again.  Such a delay would lead to significant cost, prevent an efficient resolution now that the issues are framed and frustrate the court's ability to manage its docket in this long-running case.

The United States' MIL No. 1 is thereby GRANTED IN PART and DENIED IN PART.

VI.  <u>EXCLUSION OF FINANCIAL DOCUMENTS (MIL NO. 4)</u>

The United States has made three separate requests, all as part of its fourth motion in limine, to exclude twenty-three financial documents Duarte produced after the close of

14

discovery.  In its first request, the United States seeks to exclude eleven financial documents: KB, KD, KE, KF, KG, KH, KI, KJ, KK, KL, KR.  *See* MIL No. 4, ECF No. 230-1.  In its second request, the United States seeks to exclude exhibit KT.  *See* ECF No. 238 (first addendum to MIL No. 4).  In its third request, the United States seeks to exclude eleven more documents: KY, KZ, LA, LB, LC, LD, LE, LF, LM, LN, LO.  ECF No. 281 (second addendum to MIL No. 4).  Regarding the first and second request, Duarte contends its productions were timely because: (1) the documents, all of which were created after the close of discovery, were supplemental, and (2) if not supplemental, their admission is substantially justified or harmless.  *See* ECF No. 243.  Regarding the United States' third request, Duarte simply contends because these documents are relevant to the remedies phase, they should be admitted.  *See* ECF No. 285.

> A.  <u>First and Second Motions</u>

The first set of eleven documents was produced after the October 2, 2015 discovery cut-off date.  *See* ECF No. 73; *see also* Summary Table *infra* pages 17–18.  Specifically, these documents were created between January and July, 2016, after the October 2, 2015 discovery cutoff but before the August 5, 2016 deadline for joint pretrial statements set in the court's first final pretrial order.  *See Table; see also* ECF No. 222.  Exhibit KT, however, was created in December 2014, before the discovery deadline, but not produced until August 5, 2016, the day joint pretrial statements were due.

The United States does not dispute all of these documents are supplemental.  *See* ECF No. 243.[3]  Instead the United States contends the documents were not "timely produced" under Rule 26(e).  ECF No. 252.  If documents are not timely produced under Rule 26(a) (initial disclosures) or Rule 26(e) (supplemental disclosures), their admission must be substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify

---

[3] The United States asserts these documents are "mere continuations or updates of documents that existed in discovery, were requested in discovery, but were withheld by Duarte during discovery," ECF No. 252, but cites to no supporting evidence.  The court need not approve the United States' assertion that "[o]f course there were prior versions of these documents," but rather relies on its assertion that the documents were not timely produced under Rule 26(e), which governs supplemental or corrected disclosures.

a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); Fed. R. Civ. P. 26(e)(1) (After making an initial disclosure under Rule 26(a), a party must supplement its disclosure "(A) in a timely manner" if the party learns the disclosure is incomplete or incorrect and the new information is not known to the other parties; or "(B) as ordered by the court").

Because admission of these documents is harmless, the court DENIES the United States' motion. It has been over a year since the United States moved to preclude the first set of documents, *see* ECF No. 230 (filed Aug. 5, 2016), and it could have sought to cure whatever prejudice it felt arose from Duarte's late disclosure. At hearing, the United States conceded it has evaluated the documents to determine their meaning, if any, to the remedies phase. Moreover, that the United States now plans to rely on several of the documents it previously sought to exclude further supports a finding that their admission would not be unfairly prejudicial.. Accordingly, there will be no "unfair surprise" should these documents be admitted. *Hoffman*, 541 F.3d at 1180.

As to its first and second motions to exclude documents, the United States' motion is DENIED.

B.     Third Motion

Regarding the third set of documents, Duarte does not contend these documents supplement those produced during discovery. *See generally* ECF No. 285. Accordingly, because these documents were not timely produced with the initial disclosures under Rule 26(a), they are admissible only if the delay in producing them was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *see also* Rule 26(a). Duarte merely argues these documents are relevant to the remedies phase generally and to Duarte's specific assertion that it "does not have the ability to pay any significant civil penalty." ECF No. 285 at 6. Relevancy is not the only touchstone of admission. *See Hoffman*, 541 F.3d at 1180. In the absence of any other assertion or information supporting the "substantially justified or harmless" standard, the United States' third request to exclude Duarte's financial documents is GRANTED without prejudice.

16

VII.    SUMMARY TABLES

For ease of reference, the following tables identify each exhibit covered by the United States' motions and the court's conclusions.

**Plaintiffs' Exhibits the United States Seeks to Exclude**

| Exhibit | Title/Description | Date on Document | Date Disclosed | MIL No./ Brief Description | Court's Conclusion |
|---|---|---|---|---|---|
| 1.  BO | Deposition of W. Nutter in *USA v. Adam Bros. Farming* | 09/27/2004 | 08/02/16—Before First JPTS | 4: Irrelevant and hearsay. | Granted |
| 2.  CJ | Declaration of P. Stokeley in *USA v. Lipar* | 03/24/2011 | 08/02/16—Before First JPTS | 4: Irrelevant and hearsay | Granted |
| 3.  CK | Supplemental Declaration of P. Stokeley in *USA v. Lipar* | 03/24/2011 | 08/02/16—Before First JPTS | 4: Irrelevant and hearsay. | Granted |
| 4.  EB | Declaration of J. Meyer in *Pebble Ltd. v. EPA* | 08/18/2014 | 08/02/16—Before First JPTS | 4: Irrelevant and hearsay | Granted |
| 5.  E | Supplemental Report of Diane S Moore | 08/2016 | 08/05/16—Day of First JPTS | 1: Untimely | Granted |
| 6.  J | Supplemental Report of Thomas Skordal | 5/2016 | 08/05/16—Day of First JPTS | 1: Untimely | Granted |
| 7.  M | Supplemental Report of David B Kelley | 8/5/2016 | 08/05/16—Day of First JPTS | 1: Untimely | Denied |
| 8.  KV | Second Supplemental Report of Diane S. Moore | 05/2017 | 5/23/17—Before the Amended JPTS | Second Suppl. MIL 1: Untimely | Granted |
| 9.  KW | Second Supplemental Report of Thomas Skordal | 05/2017 | 5/26/17—Day of Amended JPTS | Second Adden. MIL 1: Untimely | Granted |
| 10. LQ | Photo of Assessment Location 9 | 5/11/2017 | 05/22/17--Before Amended JPTS | Second Suppl. MIL 1: Untimely | Granted |

| Exhibit | Title/Description | Date on Document | Date Disclosed | MIL No./ Brief Description | Court's Conclusion |
|---|---|---|---|---|---|
| | | | | Second Adden. MIL 4: Untimely | |
| 11. LR | Photo of Assessment Location 11 | 5/11/2017 | 05/22/17-- Before Amended JPTS | Second Suppl. MIL 1: Untimely<br><br>Second Adden. MIL 4: Untimely | Granted |
| 12. LS | Photo of Assessment Location 19 | 5/11/2017 | 05/22/17-- Before Amended JPTS | Second Suppl. MIL 1: Untimely<br><br>Second Adden. MIL 4: Untimely | Granted |
| 13. KB | Letter from W. de Bruyn (Bank of the West) to John Duarte re: Obligations Owed by Duarte Nursery, Inc. | 01/12/2016 | 06/21/16— Before First JPTS | 4: Untimely | Denied |
| 14. KD | Distribution of Sales | N/A | 07/25/16— Before First JPTS | 4: Untimely | Denied |
| 15. KE | Duarte Nursery, Inc. Balance Sheets | 03/2016 | 06/21/16— Before First JPTS | 4: Untimely | Denied |
| 16. KF | Duarte Nursery, Inc. Balance Sheets Profit and Loss Statement | 03/2016 | 06/21/16— Before First JPTS | 4: Untimely | Denied |
| 17. KG | Duarte Nursery Pasture, An Appraisal for Bank of the West | 03/03/2016 | 07/25/16— Before First JPTS | 4: Untimely | Denied |
| 18. KH | Duarte Nursery Inc., Property Information | N/A | 07/25/16— Before First JPTS | 4: Untimely | Denied |

| Exhibit | Title/Description | Date on Document | Date Disclosed | MIL No./ Brief Description | Court's Conclusion |
|---|---|---|---|---|---|
| 19. KI | Letter from W. de Bruyn (Bank of the West) to John Duarte re: Obligations Owed by Duarte Nursery, Inc. | 04/03/2016 | 06/21/16— Before First JPTS | 4: Untimely | Denied |
| 20. KJ | Letter from T. Reimers to John Duarte | 03/07/2016 | 07/25/16— Before First JPTS | 4: Untimely | Denied |
| 21. KK | Booked Sales vs Actual Comparison | N/A | 07/25/16— Before First JPTS | 4: Untimely | Denied |
| 22. KL | Letter from W. de Bruyn (Bank of the West) to John Duarte re: Obligations Owed by Duarte Nursery, Inc. | 06/13/2016 | 6/21/16— Before First JPTS | 4: Untimely | Denied |
| 23. KR | Report of Inventory Subject to Security Interest | 7/25/2016 | 07/25/16— Before First JPTS | 4: Untimely | Denied |
| 24. KT | John and Alexandra Duarte - Personal Financial Statements | 12/2014 | 8/5/2016—The day the first JPTS was due | First Adden. MIL 4: Untimely | Denied |
| 25. KY | Duarte Nursery, Inc. Balance sheet for period ending December 2016 | 12/2016 | 05/22/17-- Before Amended JPTS | Second Adden. MIL 4: Untimely | Granted |
| 26. KZ | Duarte Nursery Profit & Loss Statement for period ending March 2017 | 03/2017 | 05/22/17-- Before Amended JPTS | Second Adden. MIL 4: Untimely | Granted |
| 27. LA | Duarte Nursery Profit & Loss Statement for period ending March 2017 | 03/2017 | 05/22/17-- Before Amended JPTS | Second Adden. MIL 4: Untimely | Granted |
| 28. LB | Duarte Nursery, Inc. Balance sheet for | 03/2017 | 05/22/17-- Before Amended JPTS | Second Adden. MIL 4: Untimely | Granted |

| Exhibit | Title/Description | Date on Document | Date Disclosed | MIL No./ Brief Description | Court's Conclusion |
|---|---|---|---|---|---|
| | period ending March 2017 | | | | |
| 29. LC | Third Amendment to Forbearance Agreement | 1/11/2016 | 05/22/17-- Before Amended JPTS | Second Adden. MIL 4: Untimely | Granted |
| 30. LD | Collateral Release And Reaffirmation Agreement | 2/21/2017 | 05/22/17-- Before Amended JPTS | Second Adden. MIL 4: Untimely | Granted |
| 31. LE | Chicago Title Company, Seller Final Closing Statement Duarte 50% | 2/22/2017 | 05/22/17-- Before Amended JPTS | Second Adden. MIL 4: Untimely | Granted |
| 32. LF | Chicago Title Company, Seller Final Closing Statement Master Statement | 2/22/2017 | 05/22/17-- Before Amended JPTS | Second Adden. MIL 4: Untimely | Granted |
| 33. LM | Fourth Amendment to Forbearance Agreement | 03/17/2017 | 05/22/17-- Before Amended JPTS | Second Adden. MIL 4: Untimely | Granted |
| 34. LN | Duarte Nursery, Inc. Financial Statements December 31, 2015 and 2014 | 9/07/2016 | 05/22/17-- Before Amended JPTS | Second Adden. MIL 4: Untimely | Granted |
| 35. LO | Duarte Nursey, Inc. 2015 S Corporation tax return | 9/12/2016 | 05/22/17-- Before Amended JPTS | Second Adden. MIL 4: Untimely | Granted |
| 36. LP[4] | John S. and Alexandra Duarte Statement of Financial Condition | 12/31/2015 | 05/22/17-- Before Amended JPTS | Second Adden. MIL 4: Untimely | Moot |

---

[4] Since the hearing on *motions in limine*, the United States has withdrawn its request to exclude exhibit LP.  *See* ECF No. 287.  Thirty-five documents thus remain.

**Exhibits the United States Seeks to Pre-Admit**

| Exhibit | Title/Description | MIL No./ Brief Description | Court's Conclusion |
|---|---|---|---|
| 8 | Corps Verified Delineation For The 1,900 Acre Property in Tehama County, California | 2: Business Records | Granted |
| 11 | NorthStar Letter to Corps about Property | 2: Business Records | Granted |
| 12 | Letter to Jim. Duarte from J. Stevens, of NorthStar Environmental | 2: Business Records | Granted |
| 13 | NorthStar Environmental Scope of Work, Signed by Jim Duarte | 2: Business Records | Granted |
| 14 | NorthStar Additional Scope of Work, Signed by Jim Duarte | 2: Business Records | Granted |
| 15 | Letter Withdrawing Certification Request from Natural Resources Conservation Service (NRCS) | 2: Business Records | Granted |
| 16 | Letter to B. Munson from NorthStar regarding Draft Delineation of Waters of the U.S. For the Rawson Road North and South Properties | 2: Business Records | Granted |
| 17 | Draft Delineation of Waters of the United States, Rawson Road 1950 | 2: Business Records | Granted |
| 18 | Draft Delineation of Waters of the United States, Rawson Road 1950 | 2: Business Records | Granted |
| 19 | Draft Delineation of Waters of the United States, Rawson Road South | 2: Business Records | Granted |
| 20 | Draft Delineation of Waters of the United States, Rawson Road South | 2: Business Records | Granted |
| 50 | Vernal Pool Fairy & Tadpole Shrimp Reports Referenced in Declaration of Len Lindstrand | 2: Business Records | Granted |

VIII. <u>CONCLUSION</u>

In sum, the court resolves the United States motions *in limine* as follows: (1) MIL No. 1 is GRANTED IN FULL; (2) MIL No. 2 is GRANTED IN FULL; (3) MIL No. 3 is GRANTED IN FULL; (4) MIL No. 4 is GRANTED IN PART and DENIED IN PART. As with all motions *in limine*, each ruling is made without prejudice and is subject to proper renewal, in whole or in part, during trial. If a party wishes to contest a pretrial ruling, it must do so through a proper motion or objection, or otherwise forfeit appeal on such grounds. *See* Fed. R. Evid. 103(a); *Tennison v. Circus Circus Enters.*, Inc., 244 F.3d 684, 689 (9th Cir. 2001).

This order resolves ECF Nos. 228-1, 230-1, 231-1, and 235-1.

IT IS SO ORDERED.

DATED: August 10, 2017.

_____
UNITED STATES DISTRICT JUDGE